Commonwealth *v.* Helmick, Appellant.

Argued March 12, 1935.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ.

*Alvin Sherbine,* with him *Barnhart & Adams,* for
appellant.

*Albert W. Stenger,* Assistant District Attorney, with
him *W. Lloyd Hibbs,* District Attorney, for appellee.

OPINION BY JAMES, J., October 2, 1935:

Defendant was convicted on an indictment charging
him with having unlawfully, wilfully, fraudulently and
feloniously, by trick and artifice, taken and carried
away from the person of Mrs. Clara Thomas, a diamond
ring valued at $275. Defendant's motions for a new
trial and arrest of judgment were refused.

Mrs. Thomas and the defendant had been on friendly
terms for some time and the defendant, either at the
request of the prosecutrix or on his own wish, arranged
for the purchase of the diamond ring in question and
Mrs. Thomas gave as a payment her diamond ring. On
July 5, 1933, defendant obtained the diamond ring
from Rothsteins, the jewelers, on a written bailment

lease for the sum of $275; on which lease was credited the sum of $100, the value of the ring given to the defendant by Mrs. Thomas. A short time later, defendant made a gift of the leased ring to Mrs. Thomas and according to her testimony she had no knowledge of the ring being under lease until about three weeks after its delivery. Defendant later made several payments on the rentals required under the bailment lease and according to his testimony had made personal demand upon Mrs. Thomas for the ring so that he might surrender the ring to the Rothsteins, who were demanding its return, which she refused to do. Later the defendant told the prosecutrix that the ring was valuable and should be insured, and she gave him the ring to have it insured and he was to return it. Defendant admitted that he told Mrs. Thomas that the ring ought to be insured and in order to get the insurance, it was necessary to take it down town to a jeweler and have it appraised. On the day the ring was delivered to the defendant or a short time later, the ring was returned to the Rothsteins and on the same day it was returned to the defendant and was retained by him until a few days before the trial, a period of four months, when it was delivered to the Rothsteins. A short time after the delivery of the ring by Mrs. Thomas to the defendant, she demanded its return, which defendant refused to do although he gave her a key to a safety deposit box in which the ring was supposed to be but did not tell her where the box was located. The case was submitted to the jury on the question whether at the time the ring was delivered to the defendant, it was taken by him with the intent to convert it to his own use without the consent of the owner.

Appellant urges that the evidence was not sufficient to sustain the conviction. The Act of March 31, 1860, P. L. 382, §103, (18 PS §2771) which covers the crime of "larceny" does not define it but the generally ac-

cepted definition is that larceny is the fraudulent taking and carrying away of a thing without claim of right with the intention of converting it to a use other than that of the owner, without his consent: Wharton's Criminal Law, 12th Ed. vol. 2, §1097.

"To sustain an indictment for larceny, the goods alleged to have been stolen must be proved to be either the absolute or special property of the alleged owner provided, that such owner be not technically the defendant. ...... But it is not necessary that the alleged owner should be legally entitled to hold property. It is enough if he in any sense have title": Wharton's Criminal Law, vol. 2, 12th Ed., §1172. "Every person who has obtained by any means possession of any movable thing is deemed to be the special owner thereof, as against any person who cannot show a better title thereto": Wharton's Criminal Law, vol. 2, 12th Ed., §1179. "Doubtless a bailee can be described as the owner if a thief is indicted; for as to the wrongdoer, possession is sufficient": Com. v. Tobin, 2 Brewster 570. "Possession, e. g., of a finder, or even of a thief, or of one who bought from a thief, will make such property that the taking of it from him by another may be itself a theft": Trickett on Criminal Law, vol. 1, p. 10. The possession of the ring by the prosecutrix was sufficient special ownership that taking it from her would constitute larceny and if by means of any trick or artifice she was induced to part with the possession only, still meaning to retain her right of property, the taking by such means amounts to larceny: Com. v. Eichelberger, 119 Pa. 254, 13 A. 422; Com. v. Dehle, 42 Pa. Superior Ct. 300, 304.

Appellant admits that the prosecutrix had sufficient title to the ring to maintain a charge of larceny against anyone who took the ring from her other than the one who procured possession of the same for the purpose of returning it to the owner. In stating his position, ap-

pellant loses sight of the material facts that on the day the defendant delivered the ring to the bailor it was returned to the defendant and retained by him until almost the day of the trial of the indictment. He himself recognized the prosecutrix had a right to the ring as he gave her a key to a safety deposit box in which the ring was supposed to be. Assuming that it was the legal duty of the defendant to return the ring to the bailor for his failure to make the payments, however, when it was returned to him it was his duty to return the ring to the prosecutrix; as against her, Rothsteins were the only ones entitled to the ring, if the payments were not made. Under all the circumstances, the jury would be clearly warranted in finding that by trick and artifice he obtained possession of the ring with the intention to deprive the prosecutrix of her rights of possession.

The first, second, third and fourth assignments of error relate to the charge of the court. The language complained of in the first assignment of error is as follows: "that it is not controlling here whether this ring was held in possession by the prosecutrix under a bailment lease such as has been exhibited here or not." In this we see no just cause for complaint. The controlling question for the jury to determine was whether by the artifice which defendant used, he took the ring with the felonious intent. The bailment lease was one of the facts to be considered but not the controlling fact.

In the second assignment of error, appellant emphasizes that the court disregarded the chief defense that the real ownership of the ring was in the bailor (Rothsteins). Conceding that under the terms of the lease Rothsteins could have obtained the ring, still as between the defendant and the prosecutrix, the latter was entitled to the possession. As we have heretofore stated, it is not necessary that the absolute owner be deprived of the possession. The special ownership which the

prosecutrix had was sufficient ownership which if taken with a felonious intent, made out the crime of larceny.

We shall not quote in full that portion of the charge which is assigned as error under the third assignment as the particular language which is complained of is as follows: "We mention that in connection with the notice given by the firm of Rothstein's for the return of this property, and we call attention to Mr. Rothstein's statement that notice was given and the ring brought back, and then the defendant was again allowed to have possession of it, under which circumstances it was the plain duty of the defendant to return the ring to the prosecutrix." Appellant's special complaint is that because of his experience with the prosecutrix in her refusal to give up the possession of the ring he was not required to place himself at the mercy of the prosecutrix with respect to the obtaining possession of the ring when again required under his bailment lease. In this the appellant loses sight of the fact that he obtained possession of the ring by artifice; that instead of returning the ring to the permanent possession of the bailor, had the ring returned to him, retained possession of it and thereby prevented the prosecutrix from asserting the title which he had given to her, of which title $100 had been credited as payment from her. We believe this portion of the charge to be a correct statement of defendant's duty.

The fourth assignment complains that the court charged the jury that it was the plain duty of the defendant to return the ring to the prosecutrix. In that connection the court further charged: "His failure to do that, however, of itself would not make him guilty of larceny. You must find as we have said, that there was a felonious intent or intention to steal as of the time that the ring was taken or gotten from the prosecutrix." If the ring was obtained by the defendant as alleged by the Commonwealth, he could not shield him-

self behind an arrangement which he had made with the bailor so as to deprive the prosecutrix of her rights. His possession of the ring was not only subject to the rights of the bailor but also subject to the rights of the prosecutrix.

In the fifth assignment appellant contends that the charge of the court as a whole was inadequate and misleading. Before concluding the charge, the court asked counsel whether there was anything he had omitted or they wished corrected in his charge. Counsel for defendant thereupon stated that the court erred in stating that the prosecutrix had a sufficient interest in the ring to make the taking of it by the defendant larceny, and in stating that it was defendant's plain duty to return the ring to the prosecutrix. Thereupon, the court further charged the jury and said in part as follows: "What we meant to say was that the prosecutrix had sufficient title or interest in the ring to make the taking of it larceny, if in connection with the taking of it you find there was an intent to steal it, that is, a felonious intent. We reaffirm that it was the defendant's plain duty to return the ring to the prosecutrix, when Rothstein's returned it to him. The only one who had a right to interfere with prosecutrix's possession of the ring was the Rothstein Company." When asked if there was anything further, no requests were made by counsel. Much of appellant's argument on this assignment relates to the assignments of error that we have previously discussed in which we find no error. Although the court did not attempt to repeat the testimony in detail, a fair analysis of the charge as a whole convinces us that it was not inadequate or misleading, but that it fairly presented to the jury the questions that were involved in the trial.

The assignments of error are overruled and the judgment is affirmed and the record remitted to the court below and it is ordered that the defendant appear in

the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.