Gottesfeld *v.* Mechanics and Traders Insurance
Company, Appellant.

110

Argued June 15, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

Before BELOFF, J., without a jury.

*Joseph H. Foster*, with him *White and Williams*, for appellant.

*David S. Malis*, for appellee.

OPINION BY FLOOD, J., September 12, 1961:

In this case the question before us is whether a loss suffered by the plaintiff was covered by the insurance policy issued to him by the defendant.

The plaintiff is a furrier. Late in March, 1955, one LaRosa entered into an agreement with the plaintiff for the delivery of furs to LaRosa on consignment for sale to his customers. The furs were to be returned within forty-eight hours if not sold by LaRosa. If the furs were sold, LaRosa was to pay for them within forty-eight hours at the prices fixed in the consignment memorandum.

During the month following the agreement, there were three transactions under its terms. Two resulted in sales to LaRosa's customers and the plaintiff was paid, while on the third occasion no sale was effected and the fur was returned in accordance with the agreement. Thereafter, on April 26, 1955, two fur coats of

a value in excess of $5,000. were delivered to LaRosa at the plaintiff's place of business under the agreement. This time he converted them to his own use and neither he nor the fur coats have been heard from since.

It is stipulated that at the time he procured the coats from the plaintiff LaRosa had no intention of returning them or their price to the plaintiff. On the same day, April 26, 1955, LaRosa obtained from several other dealers fur garments, jewelry and clothing on credit, valued in excess of $15,000., which were likewise appropriated and never paid for. It seems clear, therefore, that LaRosa had the intention of converting the coats to his own use when he received them from the plaintiff on the latter's premises on April 26, 1955.

1. The insurance policy issued by the defendant to the plaintiff, and in force on the date of the theft is denominated an "Inland Transit Floater Policy". The body of the policy, however, consists entirely of a series of conditions. The actual coverage is set forth in five endorsements. The principal coverage appears to be contained in the fifth endorsement, entitled "All Risks Transportation Endorsement". This covers all of plaintiff's goods and merchandise in transit within the continental United States and Canada in the custody of a carrier "from the time the goods leave the factory, store or warehouse at initial point of shipment . . . until same are delivered at store or warehouse at destination." There follows the clause: "This policy insures, subject to the foregoing provisions, against all risks of loss or damage from any external cause, with the following exceptions:—". The listed exceptions are of no importance in the decision of this case.

The plaintiff claims that the last quoted clause covers his loss here. Each time he quotes the clause in making this argument in his brief, however, he replaces by asterisks the words "subject to the foregoing provisions". It is hard to imagine any loss whether through

the hazards of transportation, burglary of plaintiff's premises, or otherwise, that would not be covered by this clause if taken out of context and the words "subject to the foregoing provisions" were deleted. In context, however, the phrase "subject to the foregoing provisions" restricts the coverage to losses in transit in the hands of a carrier, and covers all such losses, whether due to fire, theft, spoilage or otherwise except as limited by the stated conditions. But it clearly does not cover the loss suffered by plaintiff in this case.

2. The court below, in finding for the plaintiff, did not rely upon the above quoted clause, but upon the third endorsement headed "Endorsement or Schedule of Items".

To fully understand this policy all five endorsements must be considered. They can best be considered in reverse order. As we have said, the fifth endorsement discussed above, covering goods in transit in the hands of carriers seems to be the principal coverage. The fourth endorsement has to do only with (1) calculation of the premium, based upon the value of the goods shipped, (2) cancellation, and (3) record of shipments. The first three endorsements give "extended coverage". The first endorsement gives coverage to shipments by Quaker City Bus Co. under certain conditions, the second to shipment by air or Railroad Express and Greyhound Lines under certain conditions. It will be seen that all of these endorsements cover goods in transit only, and if plaintiff is to recover, it must be on the remaining, or third endorsement.

The pertinent part of the third endorsement reads as follows:

"This policy is hereby extended to cover the property insured while at any location within the U. S. and/or Canada other than premises owned, leased or controlled by the assured, subject to the following restrictions:

"(A) Property shipped on consignment for sale or distribution shall be covered for a period not exceeding thirty (30) days after date of arrival at consignee's premises or other place of storage or deposit;

"(B) Property shipped on consignment for sale or distribution shall be covered until accepted or returned;

"(C) Shipments of property not consigned shall not be covered at points of sale-distribution of manufacturing premises nor shall they be covered for more than thirty (30) days at any other place of storage or deposit unless in the custody of a carrier, incidental to transportation, in which case no time limit applies. . .

"It is further understood and agreed that this company shall not be liable under this endorsement for loss by wrongful conversion or secretion by the party in possession of the property."

In our opinion, it appears from this language, without ambiguity, that (1) the policy does not cover a loss occurring upon premises owned, leased or controlled by the assured and (2) it does not cover any loss by wrongful conversion by the party in possession who is not a carrier.

While the court below and the plaintiff find ambiguity in the language of this endorsement, their positions are necessarily based upon the propositions (1) that the loss did not occur upon the premises of the plaintiff and (2) that the goods were stolen rather than converted.

3. By stipulation LaRosa received the coats from the plaintiff upon the latter's premises and at the time of the receipt had no intention of returning them or paying for them. This being so, the conversion was complete at that time and place, and was consequently excluded from the coverage of the policy. The loss occurred, not while the goods were in transit, but upon

"premises owned, leased or controlled by the assured" and there is nothing in any of the endorsements to cover a loss in this situation.

We need not decide whether the third endorsement above quoted covers property not shipped but delivered to a consignee by the plaintiff without the intervention of a carrier. Even if it does, it does not cover such property when it is delivered upon the premises and the loss occurs before it is removed from the premises.

A conversion is the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification. *Pearl Assurance Company, Ltd. v. National Insurance Agency, Inc.*, 151 Pa. Superior Ct. 146, 30 A. 2d 333 (1943).

A conversion occurred here upon the premises since LaRosa received the goods upon the premises with the intent at that time to appropriate them to his own use. If so, the loss, having occurred upon the premises of the assured, is not covered.

4. But even if it be said that the loss did not occur until LaRosa's failure to return the furs at the end of forty-eight hours, and that he was entitled to a locus poenitentiae for that period, yet at least at the end of that time there was a conversion. At the end of this period LaRosa had failed to return the goods, and at that time, at the latest, he had disposed of them or retained them with the intention to appropriate them to his own use. This is a conversion. *Pearl Assurance Co., Ltd. v. National Insurance Agency, Inc.*, supra. Under the stipulation, no inference other than a conversion of the coats either upon receipt or at or before the expiration of the forty-eight hours is admissible.

The lower court held that LaRosa's appropriation of the goods was larceny and therefore not excepted under

the clause relieving the company from liability for wrongful conversion by the party in possession. But every larceny includes a wrongful conversion and therefore is within the exception.

Larceny, by definition, is taking or carrying away the property of another with intent to convert it to the use of someone other than the owner without his consent. *Thomas v. Kessler,* 334 Pa. 7, 5 A. 2d 187 (1939). The same intent is necessary to establish the crime of fraudulent conversion, *Commonwealth v. Cavanaugh,* 159 Pa. Superior Ct. 113, 46 A. 2d 579 (1946); larceny by bailee, *Commonwealth v. Maher,* 11 Phila. 425 (1876); *Commonwealth v. Taub,* 173 Pa. Superior Ct. 165, 96 A. 2d 188 (1953); or larceny by trick, *Commonwealth v. Helmick,* 119 Pa. Superior Ct. 256, 180 A. 759 (1935).

Plaintiff argues that this construction deprives him of the coverage he wanted and thought he was getting under the third endorsement, a typewritten endorsement giving him coverage beyond the common carrier coverage. The trouble with this argument is that nothing in the record shows that he wanted or contracted for the coverage which is excepted in the policy. His averment to this general effect in paragraph seven of his complaint was denied in the answer. Nor was there any mention of plaintiff's wishes in this regard or of their communication to the defendant in the stipulation upon the basis of which the case was decided. This argument must then rest on the language of the policy, and this does not support it. This endorsement is less than a page in length, and the exception as to wrongful conversion by the party in possession is not buried in small print but is typewritten, in capitals, in the same type as all the rest of the endorsement.

Plaintiff argues that since larceny is not excluded *eo nomine,* the policy should not be construed to exclude it through the use of the words "wrongful conversion".

Since every larceny involves a wrongful conversion, we cannot follow this reasoning.

He also implies that since we have a statutory crime in Pennsylvania denominated "fraudulent conversion" this alone is excluded. It is enough to say that what LaRosa did is precisely what is defined as the crime of fraudulent conversion. Act of June 24, 1939, P. L. 872, §834, 18 PS §4834. If so, the fact that it is also larceny would make no difference in the construction of the policy.

The limits of the offence of fraudulent conversion were nicely defined by President Judge KELLER as follows:

". . . [It] was essential that the money or property so fraudulently withheld or converted by the defendant must have *belonged* to the party so injured. It did not apply to one who *borrowed* money even though he may have had no intention of paying the loan, for by the act of lending the money became the property of the borrower. . . It does apply, however, where money, securities, or property belonging to A. are intrusted to the defendant to deliver to B., or to sell or dispose of the same, and to collect and pay the money received or the net proceeds arising from such sale or disposal to A., and instead he fraudulently applies the same to his own use. . ." *Pearl Assurance Company, Ltd. v. National Insurance Agency, Inc.,* supra, at p. 155.

In short the endorsement protects the plaintiff against theft from the consignee, but not theft by the consignee, whether that theft takes the form of embezzlement, fraudulent conversion, larceny by bailee, larceny by trick or common law larceny. Each of these crimes, when committed by a person who has obtained possession or custody without the use of force, involves a wrongful conversion. To construe this contract as plaintiff would have us do would not resolve an ambiguity against the insurer, but would change the con-

tract and read into it an undertaking which is not there.

The plaintiff strongly urges the authority of the case of *Lake v. Simmons,* [1927] A. C. 487. This was a policy insuring a jeweler from loss to any of his stock in trade from any cause, when the goods were in his custody or in the custody of any person to whom he might have entrusted them for sale and return, valuation, inspection or any other purpose, with an exception, however, as to goods entrusted to a customer. While the facts relating to the plaintiff's loss were somewhat similar to those before us, what the court decided was that by reason of the thief's misrepresentation the goods had not actually been "entrusted" to her and therefore did not fall within the exception. The court said that when goods were physically delivered under such circumstances property did not pass, so that appropriation by the receiver constituted larceny by trick. But the policy covered theft and the court was not called upon to say, and did not discuss, whether the appropriation also constituted conversion. It is therefore of no help to the plaintiff in this case.

What the plaintiff seems to rely upon in the *Lake* case is dictum relating to the English rule that where possession only is fraudulently obtained and property has not passed, a subsequent or contemporaneous conversion is larceny by trick. This common law rule is in effect in Pennsylvania. *Lewer v. Commonwealth,* 15 S. & R. 93 (1827); *Commonwealth v. Quinn,* 144 Pa. Superior Ct. 400, 19 A. 2d 526 (1941). But it has no bearing on the case before us. The exception here covers "wrongful conversion . . . by the party in possession". Fraudulently or not, LaRosa had obtained possession. In the case of *Commonwealth v. Helmick,* supra, the court affirmed a conviction for larceny by trick, so called, in which, according to the opinion, the case was submitted to the jury on the question whether

at the time the ring was delivered to the defendant, it was taken by him with intent to convert it to his own use without the consent of the owner.

The other cases cited which indicate that the facts before us constitute certain types of larceny likewise fail to hold that they do not also constitute wrongful conversion and are equally valueless as authority.

The one case which seems at first blush to point appellee's way is *Champion v. Chicago Fire & Marine Insurance Co.*, 104 N. J. L. 554, 141 A. 794 (1928), but in reality it does not advance his cause. There the policy covered "theft . . . excepting . . . wrongful conversion . . . by a mortgagor or vendee in possession". The court had no trouble in finding that one who by deceit obtained possession of an insured automobile to try it out as a prospective purchaser and then appropriated it was not a mortgagor or vendee in possession and that there was a theft. There was no holding that there was no wrongful conversion, but only that the thief was not a mortgagor or vendee in possession.

The furs in this case were, under the rule of *Commonwealth v. Helmick*, supra, wrongfully converted by the party in possession on the premises of the assured when he received them intending to convert them. Consequently the loss comes unambiguously within two of the exceptions in the policy. Moreover, a fair reading of the policy shows that a theft by a consignee, as distinguished from a theft from a consignee, was never intended to be covered. Therefore the judgment must be reversed.

Plaintiff has filed a motion to quash the appeal upon the ground that the matter was submitted to the trial court upon a case stated without reservation of a right to appeal. However, the matter was tried without a jury by a judge upon pleadings, exhibits and a stipulation of facts. No judgment was entered until exceptions to the trial judge's finding had been filed, argued

before the court en banc and dismissed. This is not a judgment upon a case stated (cf. *National Freight Bureau v. Martin Company*, 62 Pa. Superior Ct. 474 (1916)) but a judgment upon the finding of a court sitting without a jury.

The motion to quash is dismissed.

Judgment reversed.