Stevenson, Appellant, *v.* Economy Bank of Ambridge.

444

Argued October 10, 1963. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

reargument
refused March 12, 1964.

*Edmund K. Trent*, with him *John D. Ray*, and *Ray
and Good*, and *Reed, Smith, Shaw & McClay*, for ap-
pellant.

*William H. Eckert*, with him *Carl F. Barger*, and
*Eckert, Seamans & Cherin*, for appellees.

OPINION BY MR. JUSTICE ROBERTS, January 21, 1964:
Appellant, Eliza W. Stevenson, instituted an ac-
tion of trespass in the Court of Common Pleas of
Beaver County against appellee, Economy Bank of
Ambridge, for conversion of the contents of a safe de-
posit box, leased by appellee to Doctor W. B. Carson,
appellant's brother-in-law, who died testate April 17,
1961, and to appellant as cotenants.

The complaint charged appellee-bank in the first
count with conversion of $450,000, the value of the
contents of the safe deposit box, to which appellant
claimed she was entitled to possession under the terms
of the safe deposit lease. This consisted of stock cer-

tificates registered in the name of decedent alone, valued at $367,000, and cash in the amount of $82,300. Not in dispute was $4,825 in currency clearly identified as appellant's. The second count alleged conversion of the $82,300 in cash, which appellant claimed was her property and to which she had the right of possession under the terms of the lease. Prior to trial, appellant withdrew the claim alleged in the first count, and summary judgment was accordingly entered for appellee. From that judgment, no appeal was taken. Thus, appellant has limited her claim to the $82,300 as set forth in the second count of the complaint.

At the conclusion of all the evidence, both sides presented points for binding instructions. The trial court refused appellant's request, granted that of appellee, and directed a verdict in appellee's favor. This appeal followed from the refusal of the court en banc to grant appellant's motions for judgment non obstante veredicto[1] or, in the alternative, for a new trial and from the entry of judgment on the verdict.

The relevant facts from which this controversy arises and on which it must be determined are not in dispute. Decedent and his wife, for many years prior to her death (October 17, 1955), were colessees of the safe deposit box. On November 16, 1955, shortly after his wife's death, Doctor Carson substituted the name of appellant, his wife's sister, for that of his deceased wife as colessee.[2] The lease for the safe deposit box

---

[1] This motion was for judgment in favor of appellant in the amount of $82,300, plus interest at 6% per annum, from April 19, 1961, to date of entry of such judgment.

[2] Appellant's evidence is that she went to keep house for Doctor Carson at his residence in Allegheny County, and at his request agreed to take care of him for the rest of his life without wages. He, in turn, promised to leave her the house and approximately $82,000 in cash in his safe deposit box. There is evidence also that decedent frequently told her that the cash in the safe deposit box was hers and that she could go there and get it when-

was signed by both decedent and appellant and two keys were issued. Each lessee retained a key, but appellant never exercised her right of access to the box during Doctor Carson's lifetime. Appellant testified that at the time Doctor Carson had her sign the lease, he gave her one of the keys. He also told her that the purpose of having her sign the lease was to make her co-owner and that she could enter the box at any time she desired.

Decedent's will, dated September 4, 1959, was prepared by his attorney and, at decedent's death, was in possession of the scrivener. Testator bequeathed his residence and half of his approximately $490,000 estate (after $6000 of pecuniary legacies) to appellant and designated his attorney as executor. On the day following decedent's death, appellant and decedent's attorney together sought and obtained access to the safe deposit box for the sole purpose of learning whether it contained a will of later date. No other will was found, and the box, with its contents intact, was returned to the vault. Appellant, on this occasion, had provided her key for entry to the box. Testator's counsel read a part of decedent's will to appellant and informed her and the president of the bank that the safe deposit box could not be opened until the will had been probated and that nothing could be removed until a proper inventory of the contents had been completed. The record does not disclose that appellant voiced any objection, nor did she express a desire to remove anything from the box at that time.

---

ever she desired before or after his death, and that he would not include the cash in his will because it was hers and he had already paid taxes on it and did not want it to be subject to taxes again. It was her testimony also that decedent had told her that on his death she was to go to the bank, enter the box, remove its contents, retain the money for herself, and deliver the stock certificates and other papers in the box to his attorney who had drawn his will and who was named his executor.

On the next afternoon (April 19), following decedent's funeral, appellant, accompanied by the funeral director, went to the bank and requested access to the box for the purpose of removing the contents in order to take the cash for herself and to deliver the stock certificates and other papers to testator's executor. Appellant was advised by the bank employee in charge of the vault that she was not permitted into the box and was refused permission to sign an entry slip. Shortly thereafter, the named executor entered the bank and, upon being informed of appellant's purpose, again stated that access to the box was not to be permitted. He repeated his direction that the box should remain closed until after probate of decedent's will and the granting of letters testamentary. It was on the basis of these instructions that appellee-bank refused appellant entry that afternoon.

The executor advised appellant that he intended to probate the will the next day (April 20) and requested her to meet him at the bank on the succeeding day (April 21) to open the box and to make an inventory of its contents.

On April 20, the will was admitted to probate by the Register of Wills of Allegheny County, and letters testamentary were duly issued to the testator's named executor.

The following day, April 21, at the appointed time, appellant and her adult son came to the bank; present also were the president of the bank, the executor, and a representative of the Pennsylvania Department of Revenue (whom the executor requested to be present).[3] Appellant furnished her key, she and the executor together signed the entry slip, and the box was removed

---

[3] The statute restricting entry into a safe deposit box at the death of a co-tenant did not become effective until January 1, 1962. Inheritance and Estate Tax Act of 1961, June 15, P. L. 373, §§103, 1101-1153, 72 P.S. §§2485-103, 2485-1101—2485-1153 (Supp. 1962).

from the vault and opened. The contents were inventoried and written copies of the list were signed by appellant, her son, the executor, the bank president and the representative of the Department of Revenue. A packet containing $4,825 in currency and marked "Property of Mrs. Eliza Stevenson" was delivered to her.

Additional cash in unmarked envelopes, amounting to $82,300, was counted by all those present, including appellant's son. To those assembled, appellant stated that decedent had told her that she should have the money. The executor, however, denied her possession and claimed it as an asset of the estate. Appellant could make her claim to the money before the Orphans' Court of Allegheny County, he added. The box also contained stock certificates, deeds, life insurance policies, and other documents, all in the name of decedent. Upon completion of the inventory, the executor took possession of the entire contents of the box except the $4,825 in bills marked as the property of appellant and previously delivered to her.

After the box had been cleared of all contents, appellant, at the request of the bank president, agreed to surrender the box so that the executor could place the stock certificates and other papers in it. She then signed the printed form at the bottom of the lease, certifying that all the property in the box had been safely withdrawn and that the box was surrendered. The executor, in the name of the estate, immediately executed a new lease for the box and placed into it everything except the currency. This he deposited with the appellee-bank in an account in the name of the estate.

The parties concede—as, indeed, they must under prevailing statutory and decisional authorities[4]—that

---

[4] Section 301 of the Orphans' Court Act of 1951, August 10, P. L. 1163, as amended, 20 P.S. §2080.301 (Supp. 1962), provides: "The orphans' court shall have exclusive jurisdiction of: . . . (13)

the issue of title to the cash found in the safe deposit box is exclusively within the jurisdiction of the Orphans' Court of Allegheny County. Only that forum is legally competent to make that initial determination. Since that adjudication is yet to be made, it is appropriate to observe that our disposition here is not intended to influence and should not be regarded as indicating or influencing the result here to be reached.

In this trespass action, the principal issue is not title to the cash at decedent's death, as it would be in the orphans' court, but rather appellant's right to possession of the cash on April 19 under the terms of the lease and whether the bank's refusal to grant her access to the box two days after decedent's death constituted a conversion of the cash contents, so as to entitle her to recover damages in that amount.

Appellant's basic contention is that the written rental lease, by its specific language, gave her the right to enter the safe deposit box on April 19, as she requested. The lease provided: "A rental contract, signed by two or more lessees, constitutes a separate rental to each, and either of them shall have access, free from liability on the part of lessor for misappropriating any of the contents thereof. . . . In all cases of joint lessees, it is hereby declared that each of them has such interest in the entire contents of said box as to entitle him or her to the possession thereof, without liability to lessor for misappropriating same, . . . ." It is argued that appellant, having the right of access to the box and being known to the bank as a colessee,[5] could not le-

---

Title to personal property. The adjudication of the title to personal property in the possession of the personal representative, or registered in the name of the decedent or his nominee, or alleged by the personal representative to have been in the possession of the decedent at the time of his death." See, e.g., *Gudleski v. Gudleski*, 405 Pa. 441, 176 A. 2d 651 (1962).

[5] Not only had appellant been admitted by the bank on the previous day, but the lease itself provided for "identification by signature being sufficient."

gally be denied access to the rented box, and that the refusal of access constituted a conversion of the cash in the box.

Appellant further contends that the bank, in refusing her access, could not have been motivated by a concern for possible liability arising from conflicting claims between the colessees because the lease, by its express terms, provided that the lessor shall not be liable for misappropriation of the contents by either cotenant.

Appellee's primary contention is that the orphans' court has exclusive jurisdiction to determine both ownership and possession of the cash and that appellant's right of access to the box pursuant to the lease did not, in any way, fix the ownership of its contents. In the absence of proof of appellant's ownership, the bank urges, appellant is not entitled to judgment in the amount of the cash found in the box.

Appellee further contends that it was legally justified in deferring appellant's access to the box for two days pending probate of the will and a proper inventory of the contents, and that such reasonable delay did not constitute a conversion of the cash. Moreover, appellee points out that on the second day, access to the box and to its contents were made available to appellant and the executor and that on that occasion, appellant surrendered the box and signed the bottom of the printed form lease. It is contended that she thereby released the bank from any claim against it for conversion. We do not view this occurrence or appellant's signature to the form as a waiver or release by her of any claim she may have acquired for conversion. The transaction was merely the termination of the lease agreement and the physical surrender of the rented box, nothing more.

It is also urged that should appellant's claim for conversion prevail, a bank would be required, in situa-

tions of conflicting claims, to determine, at its peril, ownership of the contents of the box. If it should turn the property over to claimant-colessee, the bank argues it would expose itself to an action for conversion by the decedent's estate, whereas if it acted as it did here, under appellant's rationale, it would be liable for conversion to her for the full value of the contents. This argument lacks validity in view of the precise provisions of the lease specifically absolving the lessor from liability for safe deposit box property misappropriated by a colessee.

Both parties advance additional contentions which we have carefully considered but find unnecessary to detail or discuss. Many of them are without direct relevance here; they are concerned primarily with various aspects of the present factual situation as they may be presented in the orphans' court. Considerable portions of the briefs are devoted to arguments seeking to determine the ownership of the cash, the tactical advantage of appellant being in possession of the cash, the burden of proof, the competency of appellant's testimony, and similar evidentiary, procedural and hearing factors, none of which are directly involved in this trespass action but which are considered by the parties as having significance, persuasiveness and value in the result to be reached in the orphans' court. These and similar orphans' court issues, not within the jurisdiction of the court below and not presently before us, we have already indicated we refrain from deciding.

"A conversion is the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *Gottesfeld v. Mechanics and Traders Insurance Co.*, 196 Pa. Superior Ct. 109, 115, 173 A. 2d 763, 766 (1961). Prosser states that "conversion is an act of interference with the dominion or control over a chattel. . . . Conversion

may be committed by: . . . (c) Unreasonably withholding possession from one who has the right to it." Prosser, Torts §15 (2d ed. 1955). Since title to the cash is for determination by a tribunal other than the court below, appellant's action for conversion, if it is to prevail, must be based upon her right of access to the box and to possession of its cash contents. Was the bank, as appellant contends, obligated under the terms of the lease to give appellant, at her request, access to the box; or was the bank, as it urges, justified in denying her entry until the executor qualified? This fundamental aspect of the controversy must be resolved by resort to the provisions of the lease agreement.

The pertinent portions of the lease, already quoted, specifically and unmistakably conferred upon appellant, as a colessee, the right of access to the box both before and after her colessee's death. The express language "either of them shall have access" and the further declaration that "each of them has such interest in the entire contents of said box as to entitle him or her to the possession thereof," do not restrict or limit her right of entry and possession to only those occasions when she is accompanied by her colessee or by his personal representative in the event of his death.

Were we to accede to appellee's argument, we would, in effect, expand the language of the lease by reading into it conditions and limitations upon the right of entry not contained in its terms. A construction of the lease which permits lessor to deny or delay access for the reasons asserted by it and upon grounds not recited or otherwise implied in the lease is to add to that writing restrictions not contained in the contract itself. To do so would be an obvious violation of the parol evidence rule. See Caplan v. Saltzman, 407 Pa. 250, 180 A. 2d 240 (1962).

Careful consideration of the lease satisfies us that appellant had a contractual right of access to and en-

try into the box on April 19, and that the bank was without legal authority or justification to preclude her from exercising that right. Its refusal to admit appellant to the box was a willful interference with her right of possession of the contents and constituted an act of conversion. Allowing her access with the executor two days later did not bar the action of conversion which she acquired on April 19. We conclude, therefore, that the court below, in the light of the undisputed facts, erred in refusing appellant's request for binding instructions.

It seems clear to us that in no event, on the record before us, could appellant's recovery against the bank reach $82,300. If it be determined that the funds in question are assets of the decedent's estate, appellant, as a fifty percent residuary beneficiary under the will, would receive, in the normal administration of the estate, half of that sum, less state and federal taxes. If she succeeds in establishing her ownership of the cash, she receives the entire amount.

Appellant concedes that if she obtains a judgment against the bank in the amount of $82,300, and she subsequently establishes her ownership of the entire fund in the orphans' court, she would be entitled to only one satisfaction and payment. She would not be entitled to payment of the judgment in this action as well as an award of that amount in the orphans' court.

Appellant's claim to damages equal to the full value of the cash in the box is based primarily upon her contention that the withholding of possession from her adversely affects her position as a litigant or claimant in the orphans' court. We are unable to accept this speculative circumstance as a basis for awarding real or compensatory damages in this proceeding. The asserted loss of a procedural or evidentiary advantage in another and independent legal action is too conjectural and unreliable a basis on which to assess substantial damages. This Court has held repeatedly that a claim

for damages must be supported by a reasonable basis for calculation; mere guess or speculation is not enough. See, e.g., *Smail v. Flock,* 407 Pa. 148, 180 A. 2d 59 (1962); *Getz v. Freed,* 377 Pa. 480, 105 A. 2d 102 (1954). Is it not entirely too speculative to base a computation of damages on the assumption that appellant will prevail in the orphans' court if she has actual, physical possession of the funds? And is it not equally speculative to base the calculation on the assumption that she will not be successful without such possession?

On the record presented, appellant has not established her entitlement to damages in the sum of $82,-300, or in any other substantial sum. All that she has proved is that she was denied possession of the funds. No acceptable evidence was offered as a basis for fixing compensation for that deprivation of possession, nor did appellant prove real, special or other compensatory items of damages. In the absence of such proof, appellant's recovery for the technical and temporary interference with her right of access and possession must be limited to a vindication of that right by an award of nominal damages.[6]

---

[6] "It has been suggested that the possessor's right to recover more than the value of his own interest be limited to cases where he has the express or implied consent of the owner to bring the action, or the owner cannot be found; and that the court might properly stay proceedings until the owner has been notified, and permitted to decide what he wants to do." (Footnote omitted.) Prosser, Torts §15, at 68 (2d ed. 1955). Of course, we do not here know who is the owner of the funds, nor shall we make that determination. As previously pointed out, should appellant be declared owner of the cash, she has suffered little, if any, proven damage. If the fund be declared property of the estate, the value of appellant's own interest in temporary possession is merely speculative on the record before us. In the particular circumstances of this case, there is no basis for any award of punitive damages. Such damages are only awarded to punish outrageous conduct. Restatement, Torts §908 (1939).

Since we are directing the entry of judgment for appellant for nominal damages only, something should be said concerning damages of that nature. Blackstone defines nominal damages as "a shilling or nominal sum." Commentaries, Book 3, Ch. XI, at 600 (Gavit ed. 1941). Courts throughout the nation have made awards for this type of recovery in amounts varying from six cents to one dollar. Nominal damages represent the award of a trifling sum where there has been a breach of duty or infraction or invasion of a right, but no real, substantial or serious loss or injury has been established. See *Bigham v. Wabash-Pittsburg Terminal Railway Co.*, 223 Pa. 106, 113, 72 Atl. 318, 320 (1909); *R. & B. Electric Co. v. Leventry*, 102 Pa. Superior Ct. 353, 156 Atl. 581 (1931); 11 P.L.E., Damages §3 (1958).

In view of the nature of nominal damages and the purpose of such recovery, there is no reason why modern courts should continue to make awards in terms of English coinage translated into American values. The basic unit of American money is the dollar, and, in the future, when nominal damages are awarded in our courts, one dollar shall be the measure thereof.

The judgment of the court below is reversed; the court below is directed to enter judgment for plaintiff-appellant in the amount of one dollar.

DISSENTING OPINION BY MR. JUSTICE COHEN:

I concur with the major determination of the majority that the "refusal to admit appellant to the box was a willful interference with her right of possession of the contents and constituted an act of conversion" and that the lower court "erred in refusing appellant's request for binding instructions." But I disagree with the majority's determination that even though there has been an invasion of appellant's rights and a breach

of appellee's duty, only nominal damages[1] should be awarded. As difficult as it may be to determine the actual damages suffered by appellant, not conceding that it cannot be determined, the landscape here is ideal for the award of consequential, exemplary or punitive damages. The assessment of damages in actions of conversion has always presented a difficult problem and we should not summarily foreclose appellant from recovery, particularly since the problem was not litigated and we have not had the benefit of briefs or arguments from counsel. In addition, the determination by the majority that nominal damages is the only solution flies square into the face of its determination that the acts of the bank constituted "a willful interference with [appellant's] right."

I would hold that the record should be returned to the lower court so that the question of damages could be properly and thoroughly litigated. To that extent I dissent.

---

[1] The majority's citation of Blackstone fails to indicate that the great commentator was speaking of damages pertaining to "Ouster of Chattels Real" (ejectment), and commented "The damages recovered in these actions are now unusually inadequate, being a shilling or nominal sum."