J. A15012/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PLAC, INC. AND JAMES S. TUPITZA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | No. 2122 EDA 2015 |
| WILLIAM H. LAMB, GUY DONATELLI | : | |
| AND LAMB McERLANE, P.C. | : | |

Appeal from the Judgment, July 9, 2015,
in the Court of Common Pleas of Chester County
Civil Division at No. 2009-07242-CA

BEFORE:  FORD ELLIOTT, P.J.E., DUBOW AND JENKINS, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED AUGUST 17, 2016**

PLAC, Inc. ("PLAC"), and James S. Tupitza, Esq. ("Tupitza"), appeal from the trial court's July 9, 2015 order entering final judgment in favor of appellees, William H. Lamb, Esq., Guy Donatelli, and Lamb McErlane, P.C. (the "Lamb Firm"), in the underlying legal malpractice action.  After careful review, we affirm.

The trial court summarized the relevant facts of this case as follows.

> PLAC was formed in or about 1991 by Tupitza and provided title insurance services.  In 2003, PLAC entered a period of expansion and hired Matthew Fetick and Ryan Peterson.  In 2004, the company acquired a majority interest in Metropolitan Title. Jim Mitchell, of Metropolitan Title, then began working as a manager for PLAC.  Fetick, Peterson, Mitchell and Access National Settlement Services, LLC (together, "ANSS Parties") sought to acquire PLAC from Tupitza and a temporary agreement was

entered in April[] 2004. Thereafter, PLAC transferred its assets to the ANSS Parties. In June[] 2004, the ANSS Parties and PLAC/Tupitza formalized the April temporary agreement. The June agreement ("Settlement Agreement") required that LandAmerica, a creditor, consent to the proposed transaction as a condition precedent to closing. LandAmerica never consented because the conditions it required were never met and therefore closing never took place.

PLAC and Tupitza [(hereinafter, "appellants")] retained the Lamb Firm to sue the ANSS Parties for damages for refusing to close. The case ended when summary judgment was entered [on November 6, 2006] in favor of the ANSS Parties and against [appellants].

Trial court opinion, 8/4/15 at 1-2.

On September 3, 2010, appellants filed a legal malpractice action against the Lamb Firm, alleging that it provided negligent representation in appellants' underlying breach of contract action against ANSS Parties. On November 12, 2010, the Lamb Firm filed a counterclaim against appellants sounding in breach of contract for unpaid attorney's fees. On January 28, 2014, the Lamb Firm sought dismissal of appellants' legal malpractice action and filed a motion for summary judgment. Following oral argument, the trial court entered an interlocutory order on July 31, 2014, granting the Lamb Firm's motion for summary judgment on the basis that "[appellants] cannot demonstrate that they would have succeeded in their underlying breach of contract case." (Trial court order, 7/31/14 at ¶ 7.) In reaching this decision, the trial court noted that the Settlement Agreement

unambiguously required the consent of LandAmerica as a condition precedent to the ANSS Parties' obligation to proceed with the closing, and this condition precedent did not occur. (***Id.*** at ¶¶ 3, 7.)

Thereafter, on August 18, 2014, appellants filed a motion for reconsideration, which was denied by the trial court on December 1, 2014. On June 10, 2015, the parties proceeded to a jury trial on the Lamb Firm's counterclaim. Following a two-day trial, a verdict was entered in favor of the Lamb Firm in the amount of $11,173.18. This verdict was reduced to judgment on July 9, 2015. That same day, appellants filed a timely notice of appeal from the trial court's July 31, 2014 and December 1, 2014 orders.[1] Appellants and the trial court have complied with Pa.R.A.P. 1925.

On appeal, appellants raise the following issues for our review.

> A. May Summary Judgment be granted where disputed issues of fact exist?

---

[1] We note that this appeal properly lies from the trial court's July 9, 2015 order. As noted, the July 9, 2015 order reduced the jury's June 11, 2015 verdict on the Lamb Firm's counterclaim to judgment, and thus, constituted a final order pursuant to Pa.R.A.P. 341. ***See Nat'l Cas. Co. v. Kinney***, 90 A.3d 747, 754 (Pa.Super. 2014) (stating, "an order is final and appealable if it disposes of all claims and all parties. . . ."), citing Pa.R.A.P. 341(b)(1). The trial court's July 31, 2014 interlocutory summary judgment order, in turn, merged into the July 9, 2015 final order and is reviewable. ***See Commonwealth v. Fulmore***, 25 A.3d 340, 345 (Pa.Super. 2011), ***appeal denied***, 34 A.3d 827 (Pa. 2011) (stating, "the merger rule merges into a final judgment all prior non-final orders for purposes of appellate review." (citation omitted)); ***Quinn v. Bupp***, 955 A.2d 1014, 1020 (Pa.Super. 2008), ***appeal denied***, 989 A.2d 918 (Pa. 2009) (stating, "interlocutory orders that are not subject to immediate appeal as of right . . . become reviewable on appeal upon the trial court's entry of a final order." (citations and brackets omitted)).

B. Where a seller of assets is required, by contract, to fully perform and deliver all assets before the buyer pays, if the buyer thereafter avoids the contract, claiming failure of a condition, may that buyer keep the assets without paying?

C. Does the general rule, "unjust enrichment is not available where the relationship of the parties is founded on a contract," apply where there has been full performance by one party, and the other party avoids the contract, yet retains the full fruits of the contract[?]

D. May the [trial c]ourt re-write a contract to insert a condition, modifying the common law duty of restitution, so as to allow the buyer to both, avoid the contract, yet keep all the assets, without making any payment?

Appellants' brief at 5-6.

Our standard of review of a trial court's order granting summary judgment is well settled:

> A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to

> judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*JP Morgan Chase Bank, N.A. v. Murray*, 63 A.3d 1258, 1261-1262 (Pa.Super. 2013) (citations and internal quotation marks omitted); *see also* Pa.R.C.P. 1035.2.

Preliminarily, we note that a legal malpractice claim may be brought by an aggrieved client in either tort or contract. *Wachovia Bank, N.A. v. Ferretti*, 935 A.2d 565, 570 (Pa.Super. 2007). "The elements of a legal malpractice action, sounding in negligence, include: (1) employment of the attorney or other basis for a duty; (2) failure of the attorney to exercise ordinary skill and knowledge; and (3) that such failure was the proximate cause of the harm to the plaintiff." *Id.* at 570-571 (citations and internal quotation marks omitted).

> In essence, a legal malpractice action in Pennsylvania requires the plaintiff to prove that **he had a viable cause of action against the party he wished to sue in the underlying case** and that the attorney he hired was negligent in prosecuting or defending that underlying case (often referred to as proving a "case within a case").

*Sabella v. Estate of Milides*, 992 A.2d 180, 187 (Pa.Super. 2010), *appeal denied*, 9 A.3d 631 (Pa. 2010) (citation omitted; emphasis added).

Following our careful review of the record, including the briefs of the parties, the applicable case law, and the well-reasoned opinion of the trial

court, it is our determination that there is no merit to the issues raised on appeal. We conclude that the trial court's August 4, 2015 opinion appropriately disposes of all the claims raised by appellants. In sum, appellants cannot demonstrate that they possessed a viable cause of action in the underlying breach of contract case against the ANSS Parties, and thus, the grant of summary judgment in favor of the Lamb Firm in this legal malpractice case was entirely warranted. Accordingly, we adopt the trial court's opinion as our own for purposes of this appellate review. A copy of this opinion is attached hereto for ease of reference.[2]

Judgment affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/17/2016</u>

---

[2] Additionally, appellants voluntarily abandoned their rights to appellate review of the federal summary judgment action, and therefore cannot establish cognizable injury to support their negligent misrepresentation claim.

PLAC, INC and JAMES S. TUPITZA : IN THE COURT OF COMMON PLEAS
        Plaintiffs

           : CHESTER COUNTY, PENNSYLVANIA

      v.

           : NO. 2009-07242

WILLIAM H. LAMB, GUY DONATELLI and
LAMB MCERLANE, PC          : CIVIL ACTION – LAW
        Defendants

## OPINION

Plaintiffs, PLAC, Inc. and James S. Tupitza, brought this action to assert legal malpractice claims against attorneys William H. Lamb and Guy Donatelli and the firm, Lamb, McErlane, P.C. (together, "Lamb Firm"). The Lamb Firm counterclaimed for breach of contract for legal services provided. Plaintiffs' claims were disposed of by summary judgment entered July 31, 2014 and upheld, on a request for reconsideration, on December 1, 2014. A jury heard the Lamb Firms' counterclaims and awarded the Lamb Firm $11,173.18 on or about June 11, 2015. Thereafter, on July 9, 2015, Plaintiffs filed a notice of appeal from the orders entered July 31, 2014 and December 1, 2014. On July 28, 2015 Plaintiffs timely filed an amended statement of matters complained of on appeal consisting of seven claims. We have addressed all of the issues raised by Plaintiffs in the footnotes to our two orders, with the exception of their first claim and part of their second claim. Reproduced below, for the convenience of the reviewing court, are the two footnotes. Thereafter, we address the two remaining claims. First, we have briefly reviewed the history of this matter.

PLAC was formed in or about 1991 by Tupitza and provided title insurance services. In 2003, PLAC entered a period of expansion and hired Matthew Fetick and Ryan Peterson. In 2004, the company acquired a majority interest in Metropolitan Title. Jim Mitchell, of Metropolitan Title, then began working as a manager for PLAC. Fetick, Peterson, Mitchell and Access National Settlement Services, LLC (together, "ANSS Parties") sought to acquire PLAC from Tupitza and a temporary agreement was entered in April, 2004. Thereafter, PLAC transferred its assets to the ANSS Parties. In June, 2004, the ANSS Parties and PLAC/Tupitza formalized the April temporary agreement. The June agreement ("Settlement Agreement") required that LandAmerica, a creditor,

consent to the proposed transaction as a condition precedent to closing. LandAmerica never consented because the conditions it required were never met and therefore closing never took place.

PLAC and Tupitza retained the Lamb Firm to sue the ANSS Parties for damages for refusing to close. The case ended when summary judgment was entered in favor of the ANSS Parties and against PLAC and Tupitza. PLAC and Tupitza claim the summary judgment resulted from negligent representation provided them by the Lamb Firm and brought the within action to pursue that claim.

In the within action, the Lamb Firm moved for summary judgment on Plaintiffs' claims, which motion was granted for the following reasons:

> To overcome Defendants' Motion for Summary Judgment, Plaintiffs are required to show that but for Defendants' alleged malpractice, they would have succeeded in their underlying breach of contract case. In other words, Plaintiffs must be able to show that they would have prevailed in their case within the case. Myers v. Robert Lewis Seigle, P.C., 751 A.2d 1182, 1184 (Pa.Super.2003).
>
> In their summary judgment motion, Defendants contend that Plaintiffs will fail because LandAmerica's consent was a condition precedent to the ANSS Parties' obligation to close under the Settlement Agreement and LandAmerica never consented. (Plaintiffs' Reply at ¶¶36, 45, 46, pp. 31, 32-33)
>
> All parties agree that LandAmerica's consent was a condition precedent to closing under the Settlement Agreement and that as of the termination date of the Settlement Agreement, LandAmerica had not consented to the sale of PLAC's assets to the ANSS Parties. (Plaintiffs' Reply at ¶¶36, 45, 46, pp. 31, 32-33; June 3, 2004 Settlement Agreement attached as Defendants' Exh. G at §1.f.)
>
> LandAmerica prepared and circulated for signature a document titled Assignment, Assumption, Consent and Release Agreement ("Assignment and Assumption Agreement"), which imposed new obligations on the parties that were not part of the Settlement Agreement. (Defendants' Exh. I) Among the new obligations was a requirement that James Mitchell, one of the ANSS Parties, personally guarantee a $100,000 loan. The parties are in agreement that Mitchell refused to extend his personal guarantee. (Plaintiffs' Reply at ¶41, p. 32)
>
> According to Plaintiffs, Tupitza agreed to retain his guarantee on this loan. (Plaintiffs' Reply at ¶41, p. 32). Although Tupitza fails to provide any evidentiary support for this claim, we accept it as true for the purpose of this motion. Plaintiffs argue that because Tupitza agreed to retain his guarantee on the $100,000 loan, the problem was resolved and the ANSS

2

Parties had no basis to refuse to sign the Assignment and Assumption Agreement.

However, Plaintiffs fail to allege that LandAmerica accepted Tupitza's agreement to retain his guarantee on the loan and no longer required Mitchell's personal guaranty. There is no evidence that the requirement of Mitchell's personal guaranty was ever waived by LandAmerica. In fact, the packet of documents supplied by LandAmerica on August 13, 2004, three days before the termination date of the Settlement Agreement, required Mitchell's personal guaranty. (Plaintiffs' Exhs. 29, 30)

Because Mitchell was not required to accept an additional term imposed by LandAmerica and LandAmerica withheld its consent, which it was free to do for any reason, the condition precedent to closing never occurred. (Defendants' Exh. A, 221:9-23) Plaintiffs therefore cannot demonstrate that they would have succeeded in their underlying breach of contract case.

(July 31, 2014 Order)

Plaintiffs sought reconsideration of an order granting Defendants' motion for summary judgment. Summary judgment was entered in this legal malpractice action after finding that Plaintiffs could not prevail in the underlying action, which involved a contract for the sale of a business ("the Settlement Agreement"). Plaintiffs had sued in that action for breach of contract, but we found that a condition precedent never occurred alleviating the obligation of the defendant, ANSS Parties, to close under the terms of the Settlement Agreement. Plaintiffs asked for reconsideration of their claim for unjust enrichment.

Plaintiffs assert the right to pursue unjust enrichment in the underlying action because, they allege, the ANSS Parties had challenged the validity or enforceability of the Settlement Agreement, distinguishing our case from the precedent of Wilson Area School District v. Skepton, 586 A.2d 513, 895 A.2d 1250 (Pa. 2006) and Cambria Savings and Loan Association v. Gross, 294 Pa. Super. 351, 439 A.2d 1236 (Pa.Super. 1982). However, a review of the motion for summary judgment filed in the underlying action by the ANSS Parties demonstrated that they did not challenge the validity or enforceability of the Settlement Agreement, but rather expressly relied upon the Settlement Agreement and its condition precedent terms to defeat Plaintiffs' claims. (Exh. M to Lamb Firm's Motion for Summary Judgment) Similarly, our grant of summary judgment was anchored to the validity and enforceability of the Settlement Agreement and the non-occurrence of the agreed upon condition precedent. Because a written contract governed the relationship between Plaintiffs and the ANSS Parties, Plaintiffs have no entitlement to quasi-contractual remedies. The failure of an express condition precedent, Land America's consent to the sale, did not render the Settlement Agreement "void" or "unenforceable". The failure of an express condition, which terminates a party's duty to perform a contractual obligation, is unrelated

3

to enforceability and will not create a remedy under quasi-contract theories of liability. Id. at 359, 439 A.2d at 1241. Plaintiffs conflate and confuse "enforceability" with a failure of a condition precedent, which terminates a duty. Shovel Transfer and Storage, Inc. v. PLCB, 559 Pa. 56, 59, 739 A.2d 133, 134 (Pa., 1999); Cambria Savings, supra. The failure of a condition precedent does not render a contract legally unenforceable or void, but rather terminates one or more obligations of one or more contracting party. Id. at 357, 439 A.2d at 1239 ("what we have here is not a void contract, but rather a contract that continued in force until an event constituting a condition of the contract occurred to terminate duty"). Unjust enrichment does not permit recovery in the face of a written contract that terminated as a result of the failure of a condition precedent.

Cambria Savings involved an unjust enrichment claim by the assignee of a contractor who had installed aluminum siding on the defendant's home pursuant to the parties' written agreement. The agreement stated that it was to be "null and void if customer cannot get disability and death and sickness insurance." Id. at 353, 439 A.2d at 1237. After the contractor had installed the siding, the homeowners' application for insurance was denied and the homeowner refused to make payment on the ground that his obligation to pay terminated when he was unable to obtain the required insurance. Id. at 354, 439 A.2d at 1238. The Superior Court held that the failure of the insurance condition did not invalidate the contract, but instead terminated the homeowner's obligation to make payment to the contractor. Id. at 357, 439 A.2d 1239-40. The Superior Court held further that regardless of how harsh or unfair the result might first appear, the contractor assumed the risk that the homeowner would be relieved of any payment obligation if the required insurance was not obtained, and therefore, the contractor's assignee could not recover under unjust enrichment or any other quasi-contract theory as the written contract expressly governed the rights and obligations of the parties.

> This is not, in fact, a case of unjust enrichment upon which a quasi-contractual right can be raised in law. The parties made a bargain and its terms were complied with, until, upon the happening of a specified event, the purchaser was released from his duty of payment.

> Appellant's brief cites numerous cases supporting the proposition that courts will not rescue parties from the harsh results of their freely contracted agreements. See, e.g., Third National Bank and Trust Co. of Scranton v. Lehigh Valley Coal Company, 353 Pa. 185, 44 A.2d 571 (1945); Durham Terrace Inc. v. Hellertown Borough Authority, 394 Pa. 623, 148 A.2d 899 (1959).

> Subsequent events have made the contractor's bargain a poor one. However, he knew when the clause was written into the agreement that he had conceded something unusual to his

4

customer as a part of the bargaining process. He also knew, and admits he knew, that Mr. Gross never promised to waive the written condition, and that it was possible that the work could be done and yet the insurance refused. The injury the contractor and its assignee, the Savings and Loan Association, have suffered, is not through a failure of duty of the purchasers, but from their own risks freely assumed under the contract.

Id. at 359, 439 A.2d at 1240–1241.

Like the contractor in Cambria Savings, when Plaintiffs insisted that the ANSS Parties take possession of PLAC's assets prior to closing they "conceded something unusual" and expressly assumed the risk that one or more of the conditions to closing would not occur. The injury suffered by Plaintiffs resulted from a risk they assumed as part of their effort to dispose of PLAC's business. The law will not create an implied contract to relieve Plaintiffs of the risk they assumed under the express terms of their contract.

Plaintiffs also argue that the contract was voidable as defined in the Restatement (Second) Contracts, §7:

A voidable contract is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance.

Comment:

b. *Grounds of avoidance.* Typical instances of voidable contracts are those where one party was an infant, or where the contract was induced by fraud, mistake, or duress, or where breach of a warranty or other promise justifies the aggrieved party in putting an end to the contract. Usually the power to avoid is confined to one party to the contract, but where, for instance, both parties are infants, or where both parties enter into a contract under a mutual mistake, the contract may be voidable by either one of the parties. Avoidance is often referred to as "disaffirmance."

REST 2d CONTR § 7. Under this section of the Restatement 2d, "[a] claim that a contract is voidable does not challenge the existence or prima facie validity of the underlying agreement, but charges that inequitable conduct associated with the formation or performance of the agreement renders it unenforceable at the election of the aggrieved party." FDA Packaging Inc. v. Advance Personnel Staffing, Inc., 73 Pa. D. & C.4th 420, 429 -430 (Pa.Com.Pl. 2005) citing Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 107-109 (3d Cir. 2000). The Settlement Agreement between Plaintiffs and the ANSS Parties was not terminated because of inequitable conduct associated with its formation. The Settlement Agreement was not terminated at all. Instead, the ANSS Parties had no duty to close under the Settlement Agreement as a result of the failure of a condition

5

precedent. The failure of the express condition did not "avoid the legal relations created by the contract", nor did the ANSS Parties assert rescission.

Finally, Plaintiffs have asserted a claim for restitution; however, restitution is a remedy for unjust enrichment, not a separate cause of action. Wilson Area School District, supra at 521, 895 A.2d at 1254.

(December 1, 2014 Order)

The only claims Plaintiffs have raised in their statement of matters complained of on appeal that were not addressed in our footnotes are set forth in their first and second paragraphs. Paragraph 1 alleges that we

resolved a disputed issue of fact in favor of the Defendants (it determined that the factual allegations made in the underlying case, to the effect that all assets of PLAC, Inc. were not delivered to the underlying defendants, was true; and that the Plaintiffs' testimony that all assets were delivered was not credible).

Our resolution of this case on summary judgment did not require us to make nor did we make any determination regarding whether, in the underlying case, all the assets of PLAC had been delivered to the ANSS Parties. If we accept Plaintiffs' position that all of PLAC's assets were delivered to the ANSS Parties, the outcome of our case is not changed because our disposition rests on the failure of a condition precedent.

Paragraph 2 of the statement of matters complained of on appeal alleges that we did not consider conversion in the underlying action. The tort of conversion requires proof of "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." Stevenson v. Economy Bank of Ambridge, 413 Pa. 442, 197 A.2d 721, 726 (Pa.1964). The ANSS Parties came into possession of the PLAC assets with the consent of PLAC and Tupitza and retained their possession with lawful justification. Accordingly, PLAC and Tupitza could not establish conversion in the underlying case.

For all of the reasons stated, we entered summary judgment in favor of the Lamb Firm in this matter.

BY THE COURT:

Date: August 5, 2015 _____
Edward Griffith, J.

6