In re: ESTATE OF James
A. BULLOTTA, Jr.

Appeal of: Carolyn Bullotta.

Superior Court of Pennsylvania.

Argued Oct. 23, 2001.
Filed May 7, 2002.

James C. Kuhn, Pittsburgh, for appellant.

Timothy E. Cassidy, Pittsburgh, for appellee.

Before: DEL SOLE, P.J., FORD ELLIOTT and ORIE MELVIN, JJ.

ORIE MELVIN, J.

¶ 1 Appellant, Carolyn Bullotta, ("Wife") appeals from the Order dismissing her Exceptions to the Memorandum Opinion and Order of Court dated October 24, 2000,[1] in which the trial court held that the Order entered in the parties' divorce proceeding adopting the marital settlement agreement shall remain in full force and effect and is controlling in the distribution of the estate of James A. Bullotta, Jr. ("Husband"). For the reasons that follow, we affirm.

¶ 2 The facts of this case were aptly set forth by the trial court as follows:

James A. Bullotta, Jr., and Carolyn Bullotta were parties to a divorce action commenced on August 11, 1998. During the course of the divorce proceedings, the parties reached an agreement concerning the division of marital assets, and on October 19, 1999, a consent Order of Court was entered setting forth the terms of their property settlement. The agreement provided for an award of the marital residence to Mrs. Bullotta, and an award of the parties' Westmoreland County real estate to Mr. Bullotta. Both parties agreed to execute and deliver a deed conveying his and her interest in the real estate to the other. The agreement further provided for the allocation of various other assets between the parties, including a pension, an annuity, various securities, automobiles, and other personal property.

On December 4, 1999, James A. Bullotta, Jr. died, the decree in divorce having not yet been entered, and all the terms of the property settlement not yet carried out. A petition for Probate of the Estate of James A. Bullotta, Jr. was filed with the Register of Wills, and Letters Testamentary were granted on

---

1. We note that while the Opinion is dated October 24, 2000, the Opinion was filed on October 26, 2000.

December 9, 1999. Thereafter, the Executrix obtained a citation directed to Carolyn Bullotta to Show Cause Why assets should not be turned over to the estate in accordance with the terms of the October 19, 1999 Order of Court.

Trial Court Opinion, 10/24/00, at 12.

¶ 3 On appeal, Wife raises the following issues for our review:

1. Is a Tenancy by the Entireties severed by a signed, but unfulfilled marital settlement agreement where the non-performing spouse dies and no divorce decree issues?

2. A marital settlement agreement in a non-bifurcated divorce action is a form of executory contract; if one spouse does not fulfill his terms of the agreement before his death, is the agreement a nullity?

Appellant's brief at 3.

¶ 4 Initially, before we may address the substance of Wife's assertions, we must determine if this appeal is properly before us. Generally, unless otherwise permitted, only appeals from final orders disposing of all claims or all parties may be the subject of appellate review. *Commonwealth v. Sartin*, 708 A.2d 121, 122 (Pa.Super.1998) (citing Pa.R.A.P. 341(b)). An appeal may be taken, however, from an interlocutory order as of right, a collateral order, or an interlocutory order by permission. *Smitley v. Holiday Rambler Corp.*, 707 A.2d 520, 524 (Pa.Super.1998) (citation omitted). A collateral order is defined as follows:

A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost. Pa.R.A.P. 313(b), 42 Pa.C.S.A.

¶ 5 Here, the issue before us essentially deals with whether assets listed in and divided pursuant to a marriage settlement agreement entered as an order in the parties' divorce action must be included in Husband's estate. This Court concluded that a similar issue could be reviewed on appeal as a collateral order in *In re Estate of Petro*, 694 A.2d 627 (Pa.Super.1997), *appeal denied*, 550 Pa. 719, 706 A.2d 1213 (1997). In that case, the administrator of the decedent's estate appealed from the trial court's order denying a motion for a new trial and entry of judgment in favor of the decedent's daughters and against the administrator of decedent's estate upon the denial of the administrator's petition to turn over assets. *Id.* at 630. This Court determined whether the assets that the decedent's daughters claimed were an inter vivos gift should be included in the estate was an issue separable from and collateral to the main cause of action, which was the administration of the assets in the decedent's estate. *Id.* Also, we found that the right involved was too important to be denied review, and the question was such that the claim might be irreparably lost because the potential existed for the dissipation of assets. *Id.*

¶ 6 Similarly, we conclude we have jurisdiction over Appellant's claims in this matter because all elements for a finding of a collateral issue are met. First, the issue of whether the assets subject to the marital property settlement agreement encompassed in the October 19, 1999 Order should be subject to distribution as part of Husband's estate is an issue separable from and collateral to the administration of Husband's estate. Second, the right involved is too important to be denied review. Further, the question is such that

the claim may be irreparably lost because there is the possibility that funds or real property that may be included in the estate may be transferred, sold, or dissipated before a final accounting occurs. As such, we will address Wife's claims.

¶ 7 Essentially, Wife asserts that the trial court erred in holding that the marital settlement agreement entered as an Order on October 19, 1999 in the parties' divorce action remained in effect after husband's death. Specifically, Wife argues that the property held by Husband and Wife in the entireties passed to Wife upon Husband's death. Also, she contends that in a non-bifurcated divorce proceeding, a marital settlement agreement becomes a nullity where one spouse dies before a final decree is entered.

¶ 8 Initially, we note that "[t]he death of a spouse during the pendency of a divorce proceeding abates the divorce action and any and all claims for equitable distribution." *In re Estate of Cochran,* 738 A.2d 1029, 1031 (Pa.Super.1999) (citation omitted). As a divorce action is abated by the death of one of the spouses prior to entry of a divorce decree, economic claims are also abated prior to the entry of a decree by the death of one of the spouses. *Estate of Pinkerton v. Pinkerton,* 435 Pa.Super. 455, 646 A.2d 1184, 1185 (1994) (citations omitted). "However, once a final divorce decree has been entered, the right of a subsequently deceased spouse to the distribution of marital property and other economic claims, where these matters have been properly put in issue before the death

of the spouse, is vested." *Id.* (citations omitted).

¶ 9 When property is held by parties in the entireties, the tenancy by the entireties can be severed by joint conveyance, express or implied agreement, or divorce. *Clingerman v. Sadowski,* 513 Pa. 179, 183–84, 519 A.2d 378, 381 (1986) (citations omitted). Historically, a tenancy by the entireties "is a form of co-ownership in real and personal property held by a husband and wife with right of survivorship." *In re Gallagher's Estate,* 352 Pa. 476, 478, 43 A.2d 132, 133 (1945). Moreover, "[i]ts essential characteristic is that each spouse is seized *per tout et non per my,* i.e., of the whole or the entirety and not of a share, moiety, or divisible part." *Id.* (citations omitted). Neither spouse may unilaterally sever an estate held in the entireties. *Id.* Further, when one spouse dies, the surviving spouse does not take a new estate; "the only change is in the properties of the legal entity holding the estate." *Fazekas v. Fazekas,* 737 A.2d 1262, 1264 (Pa.Super.1999) (citation omitted). During the duration of the entireties estate, either spouse may act for both spouses as long as both spouses share in the proceeds, and neither spouse may appropriate property for the spouse's own use to the exclusion of the other spouse without first obtaining the consent of the other spouse. *Id.* (citations omitted).

¶ 10 In this case, we are presented with an express agreement purporting to sever the entireties nature of property held by Husband and Wife in the entireties.[2] In

---

**2.** We note that this case does not present us with a factual scenario whereby the property held in the entireties was severed by implied agreement. Here, there was no misappropriation of the entireties property by one spouse and a request for partition by the other. *See Berhalter v. Berhalter,* 315 Pa. 225, 173 A. 172 (1934) (holding that the unilateral action of

wife in diverting $6000 from an entireties bank account was an offer that was accepted by husband's petition for division of funds.); *Stemniski v. Stemniski,* 403 Pa. 38, 169 A.2d 51 (1961) (holding that when husband withdrew bonds held in the entireties and deposited the proceeds in an account in his name only and wife then petitioned the court for an

*Stop 35, Inc. v. Haines*, 374 Pa.Super. 604, 543 A.2d 1133, 1134 (1988), we reversed the trial court's order directing the former wife of a judgment debtor to pay the judgment from proceeds derived from the sale of real property owned by the wife. In that case, the parties executed an agreement providing for the equal division of proceeds upon the sale of their residence. *Id.* at 1134. We determined that because the agreement relied upon by the judgment creditor was not a deed and was not recorded, the agreement "was nothing more than an agreement, modifiable by mutual consent, to divide equally the property in the event that sometime in the future the property were sold." *Id.* at 1136. Further, we noted there was no present intent to sever the entireties estate in the real property. *Id.* As such, we concluded that the agreement "was nothing more than an expression of intention to divide the net proceeds if and when the real estate was sold for an adequate price." *Id.* Accordingly, we found no severance of the entireties estate prior to the time the residence was conveyed to the wife, and thus concluded that the husband did not have a separate interest in the marital residence when the judgment debtor's lien attached. *Id.*

¶ 11 Our analysis in this case, however, does not rest upon whether the entireties nature of the property was destroyed by the parties' agreement. In *Reese v. Reese*, 351 Pa.Super. 521, 506 A.2d 471 (1986), this Court affirmed the trial court's order enjoining the surviving husband from interfering with the distribution of the marital property in accordance with a decree of equitable distribution. In that case, this Court considered the issue of the effect of a spouse's death before a final decree in divorce is entered when a decree of equitable distribution has been previously entered dividing the marital property owned by a husband and wife as tenants by the entireties. *Id.* at 472. The trial court in *Reese* denied the husband's motion to strike the order of distribution and a subsequent monetary judgment entered pursuant to the order, and also enjoined the surviving husband from interfering with the disposition of property in accordance with the court order. *Id.* Pursuant to Husband's request, the trial court heard the property claims without reference to a master, and later filed an order dividing the parties' real and personal property. *Id.* at 472–73. The wife filed exceptions, and after some changes were made, a decree of distribution was entered. *Id.* at 473. Neither party filed an appeal and both parties took sole possession of the properties they were awarded. *Id.* The wife then passed away before a final divorce decree was entered. *Id.* After her estate filed a petition for special relief, the court entered a decree nisi directing husband to act in accordance with the decree of distribution. *Id.* The husband appealed from the denial of his exceptions and petition to vacate the order of distribution. *Id.*

¶ 12 This Court concluded that as the husband received the relief he requested and acted in accordance with the court's order, he could not then argue that the divorce court had no jurisdiction to act. *Id.* at 474. We noted that the trial court had determined that both parties agreed to bifurcate the economic claims from the remaining divorce action and allow the equitable distribution to occur prior to the issuance of a divorce decree. *Id.* at 475. Further, we noted that the trial court ob-

accounting and reimbursement for one-half of the amount of the bonds, the spouses' actions constituted an offer and acceptance and the

property was then considered fit for accounting and division.)

served that neither party requested that the finality of the equitable distribution order be contingent upon the issuance of the final decree. *Id.* In sum, we concluded: "one who requests pre-divorce equitable distribution, who receives the relief he has requested and who acts to receive the benefits of an order distributing marital property is thereafter estopped from denying the jurisdiction of the court to enter the order prior to divorce." *Id.*

¶ 13 In this case, Wife asserts that the Orphans' Court cannot order the parties' property held in the entireties to be divided pursuant to the October 19, 1999 Order. She argues that the facts in this case are substantially different from the facts in *Reese* because this case involves an Order entered by the court adopting the parties' marital settlement agreement and because an earlier Order prohibited bifurcation. We disagree that the facts of this case are so different from the factual scenario in *Reese* such that a different result is warranted.

¶ 14 Here, after Wife petitioned the court for an order prohibiting bifurcation the trial court entered an Order on September 25, 1998 specifically prohibiting bifurcation, and also providing that no divorce decree would be issued unless permitted by later Order of Court.[3] Further, the Order directed the parties to file Inventories within sixty days. Subsequent to the entry of said Order, the parties began negotiations concerning their economic claims. On September 27, 1999, Wife filed a Petition to Enforce Settlement Agreement in which Wife asserted that the parties' correspondence evidenced that a settlement agreement had been reached and that Husband was at-

tempting to repudiate the agreement. Accordingly, on October 19, 1999, the trial court entered an Order specifically setting forth the distribution of the parties' assets based upon the parties' agreement. Wife was awarded a portion of Husband's pension pursuant to a QDRO. She was also awarded fifty percent of Husband's annuity and savings fund in accordance with a QDRO. The parties' real estate located in Westmoreland County was awarded to Husband, and Wife was awarded the marital residence. The remaining real estate owned by the parties was to be sold, and the proceeds were to be divided equally.[4] Prior to the sale of the parties' rental property, Wife was to take over management of said property. The Order also listed several bank accounts, IRAs, mutual funds, and cash values of insurance contracts to be divided equally between the parties. The Order further directed Husband to file an accounting within twenty days and also required that the parties prepare the respective deeds of the property they were to receive and pursue qualification of domestic relations orders for the distribution of Husband's pension and annuity funds. The Order also specifically stated: "[u]pon acceptance of such orders and qualifications of same by the respective Plan Administrators [sic] s [sic] Qualified Domestic Relations Orders, and recordation of deeds effecting the transfer of the marital residence and Westmoreland County properties, a divorce decree may issue herein." Trial Court Order, 10/19/99, at 5. Finally, the Order provided that it constituted "a final order settling all claims between the parties pending herein." *Id.* at 6.

---

**3.** This Order was filed on October 5, 1998.

**4.** The Order also provided that if one spouse died prior to the sale of the property, the surviving spouse would receive sixty percent of the sale proceeds, and the estate of the deceased spouse would receive forty percent of the proceeds.

¶ 15 Pursuant to said Order, the parties negotiated and executed QDROs regarding Husband's pension and savings and annuity funds and began receiving payments and proceeds in accordance with those orders. Wife began withdrawing monies from a money market fund. Husband drafted a deed for one of the Westmoreland County properties and changed the beneficiary designation on one of the IRA accounts. Also, pursuant to the Order, Wife notified tenants of the parties' rental property located in Pitcairn, Pennsylvania to begin paying her their rent. She also changed the locks at the workshop at the rental property.

¶ 16 Accordingly, the facts of this case reveal that both parties began acting in reliance upon the October 19, 1999 Order directing distribution of the parties' property. While certainly not all of the provisions set forth in the Order were fully effectuated as of the date of Husbands death, it is clear by Wife's actions that she acted in reliance upon the October 19, 1999 Order. Although Husband had not yet provided Wife with a full accounting of the marital estate and not all of the proceeds of the parties' various accounts had been divided, both parties were taking steps to follow the terms of the Order. Further, the October 19, 1999 Order specifically provided that it represented the final agreement between the parties.

¶ 17 Moreover, we disagree that because the trial court in this case entered an Order based upon an agreement between the parties directing that a divorce decree would be issued upon completion of deed transfers and acceptance of the domestic relations orders by the appropriate plan administrators, the analysis in *Reese* is inapplicable to the facts of this case. In *Reese*, after a request by the husband for the court to hear the economic claims of the parties without reference to a master, the trial court issued a decree dividing the parties' property. Here, after Wife requested and was granted an Order prohibiting bifurcation, she willingly entered into a final agreement with husband to dispose of the marital property. She petitioned the court to enforce said agreement, which was then entered as an Order. Accordingly, she cannot now claim and is estopped from arguing that the Order is unenforceable because of a prior Order prohibiting bifurcation. The October 19, 1999 Order clearly manifests the parties' intent to finally settle economic claims between the parties. Further, we are unable to discern a practical difference between the fact that the Court in *Reese* issued a decree disposing of the parties' property after a hearing on the matter and the fact that the trial court in the instant case entered an Order adopting the agreement of the parties. As such, we find the analysis in *Reese* controlling in the immediate case and hold that Wife is estopped from arguing that the October 19, 1999 Order is unenforceable. Finding no error in the court's determination that the October 19, 1999 Order is controlling in the distribution of Husband's estate, we affirm.

¶ 18 Order affirmed.