J. A01005/15

2015 PA Super 65

IN RE:  ESTATE OF FRED H. NAVARRA  :   IN THE SUPERIOR COURT OF
                                  :         PENNSYLVANIA

SANDRA ROBERTS NAVARRA,  :
BY HER AGENT, CHRYSTIE CLARKE  :
                                  :

         v.  :

RICHARD E. NAVARRA, EXECUTOR OF  :
THE ESTATE OF FRED H. NAVARRA  :
AND THE ALLEGHENY GROUP, INC.  :
                                  :

APPEAL OF:  RICHARD E. NAVARRA,  :   No. 571 WDA 2014
                                  :
          Appellant  :

Appeal from the Order Entered March 10, 2014,
in the Court of Common Pleas of Lawrence County
Civil Division at No. 100 of 2012, O.C.

BEFORE:  FORD ELLIOTT, P.J.E., DONOHUE AND ALLEN, JJ.

OPINION BY FORD ELLIOTT, P.J.E.:  **FILED APRIL 06, 2015**

Appellant, Richard E. Navarra, appeals the granting of a Petition for Declaratory Judgment filed by appellee, Chrystie Clarke.  Finding no error, we affirm.

The trial court has accurately summarized the factual background:

On December 30, 1983 Fred Navarra married Sandra Roberts, and she assumed his surname. Following their marriage, Fred and Sandra lived together in their marital home located on Phillips School Road, Wilmington Township, Pennsylvania. Fred and Sandra both had children from prior marriages, and their union created an extensive blended family.[Footnote 1] Over time,

Sandra began displaying increasingly aggressive signs of dementia, and Fred suffered physically debilitating symptoms from a severe automobile accident that occurred in 2007. For several years, Fred and Sandra employed in-home caregivers to assist them on a daily basis. On January 29, 2007, Sandra's daughter, Chrystie Clarke (hereinafter, "Clarke"), was appointed as Sandra's Agent under a durable power of attorney. On May 14, 2007, Nickolas F. Paolini was appointed as Fred's agent under a durable power of attorney. On December 31, 2009, Mr. Paolini and Clarke executed a Stock Purchase Agreement, wherein 160,607 shares of Allegheny Group, Inc. were sold for $2.41 per share. The funds received were intended to pay for costs associated with Fred and Sandra's in home care, and made payable in equal halves to Fred and Clarke, as Sandra's Agent.

> [Footnote 1] Richard Navarra (formerly married to Chris Navarra), Linda D'Augostine, JoAnne Navarra and Charlene Navarra are the children of Fred H. Navarra. Chrystie Clark and Brent Young are the children of Sandra R. Navarra.

Due to her mother's dementia and Fred's declining physical health, Clarke believed that Sandra was not receiving proper care at the marital residence, and Clarke moved Sandra into an assisted living facility on November 11, 2009. Fred opposed Sandra's relocation, but lacked the physical willpower or legal authority to oppose Clarke's decisions as her mother's agent.

Shortly thereafter, on December 4, 2009, Clarke filed a Petition for Adjudication of Incapacity relative to her mother Sandra. This action was commenced at case number 109 of 2009, Orphans Court. Following a hearing held on January 11, 2010, Sandra Navarra was declared incapacitated, and Clarke was appointed Plenary Guardian of the Person of Sandra Navarra.[Footnote 2] On July 24,

2012 Fred Navarra died. Upon Fred's death, his children became beneficiaries of seventy percent of Sandra's estate. Therefore, on November 29, 2012, a Motion for Leave to Intervene was filed in the guardianship action on behalf of Richard Navarra, Chris Navarra, Linda D'Augostine, JoAnne Navarra and Charlene Navarra (hereinafter collectively referred to as the "Navarra children"). In their motion to intervene, the Navarra children requested that Chrystie be directed to file an account of her administration as Agent of Sandra Navarra. The Navarra children's request was based upon their belief that Sandra had sufficient funds to pay her monthly expenses and that these funds were being mismanaged by Chrystie. The Navarra children asserted that their belief was supported by the fact that Chrystie initiated a support action against Fred following Sandra's relocation into an assisted living facility.

> [Footnote 2] Chrystie Clark's [sic] Petition for Adjudication of Incapacity included a request for appointment of a guardian of the estate of Sandra Navarra, but this request was withdrawn at the January 11, 2010 hearing.

On December 11, 2012 Clarke filed a Petition for Declaratory Judgment at case number 100 of 2012, Orphans' Court. In her Petition for Declaratory Judgment, Chrystie specifically requested the Court to make a determination regarding ownership of the remaining proceeds from the Stock Purchase Agreement entered into by Fred Navarra, Clarke and Allegheny Group, Inc.

Trial court opinion, 2/18/14 at 1-3.[1]  The trial court resolved the Declaratory

Judgment action in favor of Clarke, ruling that the remaining proceeds under

the Stock Purchase Agreement payable to Fred Navarra belonged solely to

Sandra R. Navarra under a tenancy by the entireties theory.   An order

denying appellant's post-trial motion was entered on March 10, 2014.   This

timely appeal followed.

Appellant raises the following issue on appeal:

> Whether the language of the Stock Purchase
> Agreement and the facts surrounding payment of the
> stock redemption proceeds overcome a presumption
> of entireties ownership[?]

Appellant's brief at 4.

Appellant's issue on appeal requires us to interpret the Stock Purchase

Agreement to determine if it severed the tenancy by the entireties held by

Fred and Sandra Navarra in the original shares of Allegheny Group, Inc.  As

we are asked to interpret a contract, our standard of review is **de novo** and

our scope of review is plenary.   **Newman Development Group of**

**Pottstown, LLC v. Genuardi's Family Market, Inc.**, 98 A.3d 645, 653

(Pa.Super. 2014).   We find that the Stock Purchase Agreement left the

tenancy by the entireties intact.

> When property is held by parties in the
> entireties, the tenancy by the entireties can be

[1] The pages of the trial court opinion are unnumbered; the page numbers are by our count.  We also note that the trial court opinion also deals with other legal actions instituted by the parties.  This appeal, however, pertains solely to the Declaratory Judgment action.

severed by joint conveyance, express or implied agreement, or divorce. ***Clingerman v. Sadowski***, 513 Pa. 179, 183-84, 519 A.2d 378, 381 (1986) (citations omitted). Historically, a tenancy by the entireties "is a form of co-ownership in real and personal property held by a husband and wife with right of survivorship." ***In re Gallagher's Estate***, 352 Pa. 476, 478, 43 A.2d 132, 133 (1945). Moreover, "[i]ts essential characteristic is that each spouse is seized ***per tout et non per my***, i.e., of the whole or the entirety and not of a share, moiety, or divisible part." ***Id.*** (citations omitted). Neither spouse may unilaterally sever an estate held in the entireties. ***Id.*** Further, when one spouse dies, the surviving spouse does not take a new estate; "the only change is in the properties of the legal entity holding the estate." ***Fazekas v. Fazekas***, 737 A.2d 1262, 1264 (Pa.Super. 1999) (citation omitted). During the duration of the entireties estate, either spouse may act for both spouses as long as both spouses share in the proceeds, and neither spouse may appropriate property for the spouse's own use to the exclusion of the other spouse without first obtaining the consent of the other spouse. ***Id.*** (citations omitted).

***In re Estate of Bullotta***, 798 A.2d 771, 774 (Pa.Super. 2002).

Where property held by the entireties is sold, the proceeds of that sale are themselves held by the entireties:

In the present case, the law is clear that the mere sale of the Vermont vacation home does not convert automatically the personal property received as a result of the exchange, i.e., the cash received from the sale, to a form of ownership other than entireties property. ***See***, ***Beihl*** [***v. Martin***, 236 Pa.], at 519, 84 A. 953 [1912] (entireties property may be real or personal property); ***see also In re Estate of Cambest***, 756 A.2d 45, 53 (Pa.Super.2000) (an intention to create entireties property is assumed from deposit of asset in both names of husband and wife, without more, and from

fact of marital relationship). As this Court held in ***Sterling v. Smith***, 200 Pa.Super. 544, 189 A.2d 889 (1963), monies received from the sale of entireties property are impressed with the status of entireties property even where the funds are placed into a bank account owned by only one spouse. ***Sterling***, 189 A.2d at 890-91. We reached this conclusion because bank deposits payable to husband and wife or to husband or wife, are presumed to be tenancies by the entireties with all the benefits relating to entireties ownership. ***Id.***, 189 A.2d at 889. In matters of entireties property, either spouse has the power presumptively to act for both, so long as the marriage continues, without any specific authorization, provided the proceeds of such action inure to the benefit of both and the estate is not terminated. ***Id.***, 189 A.2d at 889.

***Johnson v. Johnson***, 908 A.2d 290, 295-296 (Pa.Super. 2006). Finally, there is a presumption under Pennsylvania law that property held by husband and wife is held as a tenancy by the entireties and this presumption can only be overcome by clear and convincing evidence that the property was not intended to be held by the entireties. ***Id.*** at 296.

Appellant cites to language in the Stock Purchase Agreement as indicative of an intent by the parties to sever the tenancy by the entireties:

> 2.01 <u>Representations by the Selling Shareholders.</u> **Each of the Selling Shareholders represents and warrants that they are the joint owners, free and clear of any encumbrances, of the Corporations Shares, and that they shall continue to be the owners until the Closing Date.** Each of the Selling Shareholders further represents and warrants that there is no suit, action or other proceeding seeking to restrain, prevent or challenge the transaction contemplated herein or otherwise questioning the validity or legality of such

> transaction shall have been instituted and be pending.

Stock Purchase Agreement at 2.01 (bolding emphasis added).

Appellant argues that the highlighted language coupled with the division of the proceeds from the sale into two equal but separate income streams manifests an intent to sever the tenancy by the entireties.[2] We disagree.

First, the language in the Stock Purchase Agreement merely states that the tenancy by the entireties in the stock shares themselves shall cease as of the closing date. However, as previously noted, the tenancy by the entireties continues in the proceeds of a sale of entireties property.

Second, the division of the proceeds into two separate income streams does not manifest an intent to end the tenancy by the entireties; rather, it reflects the fact that at the time the Stock Purchase Agreement was entered, Fred and Sandra Navarra were each represented by separate agents responsible for their care, and the monies were made payable directly to each agent at each agent's own address. (*See* Promissory Note at paragraph 3.) The proceeds of the Stock Purchase Agreement were nonetheless used for the mutual benefit of Fred and Sandra Navarra for their in-home care. Moreover, the language of the Promissory Note which provided for the divided income streams "promises to pay to the order of

---

[2] A Promissory Note was executed by Allegheny Group, Inc. pursuant to the Stock Purchase Agreement to provide payment for the shares.

"FRED HENRY NAVARRA AND SANDRA ROBERTS NAVARRA, **husband and wife**." (Promissory Note preamble (emphasis added).) As noted by appellee, a conveyance of real or personal property to a husband and wife, without more, creates a tenancy by the entireties. **Plastipak Packaging, Inc. v. DePasquale**, 937 A.2d 1106, 1109 (Pa.Super. 2007).

Finally, we note that the Stock Purchase Agreement contains integration clauses at paragraphs 4.05 and 4.08. Thus, to the extent that appellant attempts to rely upon extrinsic evidence to show that the parties intended to sever the tenancy by the entireties with the Stock Purchase Agreement, we find that evidence barred by the parol evidence rule.[3]

> An integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution. Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract.

**PNC Bank, National Ass'n v. Bluestream Technology, Inc.**, 14 A.3d 831, 841-842 (Pa.Super. 2010) (citations omitted).

---

[3] Appellant refers to other actions of the parties that indicate that at the time of the Stock Purchase Agreement the parties "were squaring off into Two (2) separate contentious camps, with complaints about each other's misappropriations of other entireties assets." (Appellant's brief at 14.)

In sum, we find that appellant failed to present clear and convincing evidence that the parties intended to sever the tenancy by the entireties with the Stock Purchase Agreement. We will affirm the order below.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/6/2015