J-A05008-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF DAVID B. CLAPPER, A/K/A DAVID BYERS CLAPPER | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: JOSHUA CLAPPER | : : : : : | |
| | : | No. 1081 WDA 2024 |

Appeal from the Order Entered August 5, 2024
In the Court of Common Pleas of Somerset County Civil Division at
No(s):  No. 56-20-00378

BEFORE:  MURRAY, J., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                **FILED: February 25, 2025**

Joshua Clapper (Appellant) appeals from the order dismissing his objections to the First and Final Account (the account) filed by Jon C. Clapper (Executor), executor of the Estate of David B. Clapper a/k/a David Byers Clapper (the Estate).  We affirm.

David B. Clapper (Decedent) died testate on October 24, 2020, survived by his wife, Sharon L. Clapper (Sharon), and their two sons, Appellant and Jude Clapper (Jude).  Decedent's Last Will and Testament (will), executed on June 1, 2020, named his brother, Executor, as executor.

The will stated that Sharon

> is not named a beneficiary under this [will] for the reason that upon my death she will own all assets which we hold in our joint

---

[*] Retired Senior Judge assigned to the Superior Court.

names. The purpose of this [will] is to provide for the distribution of those items which I own individually….

Will, 6/1/20, ¶ 2. The will specifically devised Decedent's vehicles to Appellant and Jude, and $100,000 to each of Decedent's four grandchildren. *Id.*, ¶¶ 3(A)-(B), 4. The will also provided:

I give to [Appellant and Jude] so much of my coin collection, silver bar set, household furniture and furnishings and personal effects such as clothing, jewelry and watches, together with any insurance thereon, as they may select[;] said items to be distributed between them as they shall mutually agree, making such distribution in as nearly equal shares as possible.

*Id.*, ¶ 3(C). Finally, the will provided that the Estate's residue be divided equally between Appellant and Jude. *Id.*, ¶ 5.

On October 27, 2020, Executor obtained letters testamentary pursuant to the will. On January 18, 2023, Executor filed the account. On March 16, 2023, Appellant filed objections to the account. Appellant alleged, *inter alia*, that Executor improperly determined that Decedent and Sharon had jointly owned certain personal property, including a coin collection and furniture. Appellant also alleged Executor improperly credited Appellant with possessing a substantial amount of cash belonging to Decedent.

On June 3, 2023, Executor filed a motion to safeguard assets, alleging Appellant had placed Decedent's cash in safe deposit boxes opened in Appellant's name. The trial court ordered that Appellant's safe deposit boxes be jointly inspected by Appellant's and Executor's counsel. The boxes contained $231,000 in cash.

The trial court held evidentiary hearings on July 18, 2022,[1] and August 3, 2023. On January 30, 2024, the trial court entered an order and memorandum opinion dismissing Appellant's objections. The trial court determined, *inter alia*, that Decedent and Sharon had jointly owned the coin collection, and the $231,000 in Appellant's safe deposit boxes had belonged to Decedent. **See** Trial Court Opinion, 1/30/24, at 2-10.

The trial court observed that Appellant's objection regarding personal property "hinges on whether the coins and personal property … were owned solely by Decedent or if Decedent and [Sharon] held the personal property as a tenancy by the entireties." **Id.** at 2 (citing **Jones v. McGreevy**, 270 A.3d 1, 13 (Pa. Super. 2022)).[2]

The trial court found Appellant

---

[1] The July 18, 2022, hearing involved Appellant's March 31, 2022, petition to remove Executor, and Appellant's May 24, 2022, motion to safeguard property. The trial court denied both the petition and motion on July 18, 2022. Neither is relevant to this appeal, though the trial court relied on portions of the July 18, 2022, hearing testimony in dismissing Appellant's objections.

[2] A tenancy by the entireties

> is a form of co-ownership of real or personal property by husband and wife, with its essential characteristic being that "each spouse is *seised per tout et non per my*, *i.e.*, of the whole or the entirety and not of a share, moiety or divisible part." **In re Gallagher's Estate**, … 43 A.2d 132 ([Pa.] 1945). When one spouse dies, the surviving spouse takes no new estate; rather, the only change is in the properties of the legal entity holding the estate….

**Jones**, 270 A.3d at 13.

has not shown by clear and convincing evidence that [the coin collection] was not intended to be held by the entireties; rather[,] the record indicates the opposite. Sharon … credibly testified that the coins were purchased with funds from a joint account of Decedent and Sharon[.] N.T., 8/3/23, at 280-81. Also, [Executor] testified that the coins were all purchased from 1972 to 2010. *Id.* at 243-44. Those dates were within the span of time that Decedent and Sharon … physically lived together.[3] Moreover, [Jude] testified that Decedent had told him that the coins were an investment for the family. N.T., 7/18/22, at 205. These facts indicate the coin collection had been held by the entireties by [Sharon and Decedent]…. Additionally, … there was no evidence provided to demonstrate that the coins had not been intended to be held by the entireties. Upon Decedent's death[,] the coins therefore would have been completely owned by Sharon … and [would] not … have entered into [the Estate]. [Nevertheless, Executor identified eight sets of the coin collection in the account. Executor] explained that [those] eight sets … [had been included in the account] because Sharon … allowed [Appellant] and Jude to divide [those eight sets after Decedent's death] and consider [them] as part of the Estate. This act by Sharon … did not have an effect on the rest of the coin collection….

[Appellant] also maintains that any [other] personalty of Decedent's should have been divided between [Appellant] and Jude…. [A]s with the coin collection[,] any property that was owned as tenants by the entireties … would have become solely owned by Sharon … upon Decedent's death….

… [Appellant] again fails to demonstrate by clear and convincing evidence that this property was not held by the entireties. Largely, [Appellant] fails to do so because he makes only vague claims for personal property. The only specific claims made are to the furniture at [Decedent's Hidden Valley home (Hidden Valley)] … and a reference to a canoe…. [Appellant's vague] claims for … personal property do not satisfy [Appellant's evidentiary] burden. As for the canoe[,] we find that [the canoe] was clearly held by Decedent and Sharon … by the entireties[,] as

---

[3] Sharon and Decedent ceased living together in 2011. *See* N.T., 7/18/22, at 184. Sharon confirmed she and Decedent never legally separated or filed for divorce. *Id.* at 184-85. She testified they remained friends, saw each other regularly, maintained joint bank accounts, and filed joint tax returns. *Id.*; N.T., 8/3/23, at 301.

it was gifted during their marriage from Sharon … to Decedent[,] and it is located at 128 Duncan Street in Meyersdale, which was the family home.[4]

With respect to the furniture at Hidden Valley, [Appellant claims] that this property clearly belonged only to … Decedent because the real estate at Hidden Valley was titled solely in Decedent's name. A variety of factors makes the status of how this furniture was owned less clear than [Appellant] states[;] however, we find that we do not need to engage in further analysis on this point because the furniture … was sold along with the real estate at Hidden Valley…. The proceeds from that sale are in the Estate and are to be distributed to [Appellant] and Jude…. Therefore, there is nothing more to be done in regard to the Hidden Valley furniture.

Trial Court Opinion, 1/30/24, at 3-5 (some citations omitted; record citations modified; footnotes added).

Regarding the cash, the trial court observed the account initially credited $152,000 in cash to Appellant, as Executor "alleged that [Appellant] took that amount of cash from … Decedent's house either immediately before or after [Decedent's] death." *Id.* at 5-6. After the inspection of Appellant's safe deposit boxes, Executor "ask[ed] for modification of the [account] to reflect $231,000 being credited to [Appellant]." *Id.* at 6.

The trial court found Executor

has provided evidence tying the $231,000 to Decedent. Executor highlighted testimony that showed Decedent was known to have hoarded cash. Jude testified that Decedent told him that [Decedent] kept cash. N.T., 7/18/22, at 208. [Executor] testified that Decedent "hoarded cash all of his life." N.T., 8/3/23, at 204. Sharon … testified that … Decedent "would hoard money at certain

_____

[4] The Meyersdale home was titled by the entireties, and was Sharon's primary residence after she and Decedent ceased living together. *See* N.T., 8/3/23, at 219.

- 5 -

times of his life." ***Id.*** at 286. **We find that the testimony of these witnesses [regarding] Decedent's habit of hoarding money is credible. We also find credible the testimony of Vicki Mauzy**, a friend and distant relative of Decedent. Vicki Mauzy testified that she and Decedent agreed that she would remain with Decedent and take care of him until his death[,] and that Decedent would provide her with funds from a lockbox located at Hidden Valley; Decedent indicated that there was more than enough money there to pay off Vicki Mauzy's home mortgage, which [had a balance of] $152,000. ***See*** N.T., 7/18/22, at 174-76, 180. During the inventorying of the Estate[,] none of Decedent's hoarded cash was discovered. ***See*** N.T., 8/3/23, at 205.

Though the cash's exact location was unknown during the inventorying[,] it was known that [Appellant] had nearly exclusive access to the Hidden Valley property and the 128 Duncan Street house immediately following Decedent's passing. ***See*** N.T., 7/18/22, at 30, 50. Vicki Mauzy also testified that [Appellant] had shown her that he possessed the keys for the lockbox at Hidden Valley. ***Id.*** at 177. In an attempt to locate the missing cash and confirm its amount[,] Executor wrote multiple letters to [Appellant,] requesting and demanding a return of the cash. N.T., 8/3/23, at 244-45. According to Executor, [Appellant] sidestepped the direct question regarding the cash. ***Id.*** Executor subpoenaed the records of local financial institutions and discovered that [Appellant] had three recently[-]opened safe deposit boxes located in Somerset Trust Company's Meyersdale office. The three boxes had only been accessed by [Appellant] twice[—]once when they were opened on September 3, 2020[,] and then once two days after Decedent's death. ***Id.*** Executor then [filed a motion] to safeguard the contents of the safe deposit boxes and to allow for a joint inspection….

Trial Court Opinion, 1/30/24, at 7-9 (emphasis added; footnote and some citations omitted; record citations modified).

The trial court granted Executor's motion and ordered that the parties' counsel jointly inspect Appellant's safe deposit boxes. ***Id.*** at 9. The trial court described what next transpired:

Even after that order and [the trial court's] denial of [Appellant's] motion to stay the proceeding, [Appellant] did not provide his attorney with keys to the safe deposit boxes. N.T., 8/3/23, at 48. This resulted in the Estate hiring a locksmith to drill out and replace the locks on the boxes.

When questioned about the $231,000 … that was discovered in the safe deposit boxes[, Appellant] testified that the cash completely belonged to him. **Id.** at 51. He then testified that he had kept all of that cash either in shoeboxes scattered throughout [Decedent's Hidden Valley home] or "wherever else [Decedent] decided to put some of it," and [also] the family safe at 128 Duncan Street. **Id.** at 54. [Appellant] also testified that the majority of the $231,000 had been stored at Hidden Valley. **Id.** at 62. As to the source of the cash, [Appellant] testified that he had gathered it over a 25[-]year period from four different cash businesses [he operated]. **Id.** at 51. Additionally, [Appellant] testified that he kept the money at his parents' house even as he moved residences and lived in a variety of different locations such as Cambridge, Massachusetts; Fort Collins, Colorado; Bethlehem, Pennsylvania; and Los Angeles, California. **Id.** at 53. When asked if there was something that would show the money belonged to [Appellant] and not Decedent, [Appellant] stated that there was not, but that [Appellant's] wife knows [about] the cash [Appellant] has. **Id.** at 56-57. [Appellant's] wife did not testify and [Appellant] stated that she was on a plane to London on the day of the evidentiary hearing. **Id.** at 57-58.

**We largely find that [Appellant's] testimony lacks credibility and find that his explanation of his ownership of the entirety of the cash is not to be believed. The story of shoeboxes full of money in someone else's house is incredible.** Further, [Appellant] claims the money originated from his business, but if this were true[,] it would seem that a variety of documents such as income tax returns, expense reports, or receipts could easily have supported this; yet no such documents [were] provided.

Given Decedent's habit of hoarding cash[;] the complete absence of hoarded cash in Decedent's houses after his passing[; Appellant's] nearly exclusive access to the houses[; Appellant's] possession of the key to the Hidden Valley lockbox[; Appellant's] opening the safe deposit boxes at Somerset Trust Company[;] and the very presence of $231,000 in [Appellant's] safe deposit

- 7 -

boxes[,] which he accessed for only the second time two days after Decedent's death, **we find it clear that the cash within [Appellant's] safe deposit boxes belonged to Decedent**. As stated previously, we found Vicki Mauzy's testimony to be credible and as such find that a minimum [of] $152,000 in cash had been in Decedent's lockbox at Hidden Valley. Additionally, upon forced inspection[,] $231,000 was located in the boxes opened by [Appellant seven] weeks before [Decedent's] death[.[5] Appellant accessed the boxes] only on the day [they were] opened and then [two] days after [Decedent's] death[,] with cash allegedly from shoeboxes stored at Hidden Valley and a safe at the Meyersdale home. Therefore, Executor has met his burden to demonstrate that $231,000 of the found cash was Decedent's prior to his death….

We find that there is a clear tie between Decedent's hoard of cash at Hidden Valley and Meyersdale and [the $231,000] in [Appellant's] safe deposit boxes. Consequently, we grant Executor's request to modify the [account] in regard to the credited cash and rule that it shall include $231,000 attributed to [Appellant].

Trial Court Opinion, 1/30/24, at 9-10 (emphasis and footnote added; footnote and some citations omitted; record citations modified).

On August 5, 2024, the trial court entered an order confirming the account. Appellant timely appealed.[6] Appellant timely filed a court-ordered

_____

[5] The trial court found Appellant "moved in with [Decedent] approximately [seven] weeks before [Decedent's] death and restricted [the] access of others to Decedent…." Trial Court Opinion, 1/30/24, at 8 n.4.

[6] Appellant's August 30, 2024, notice of appeal purports to appeal from the January 30, 2024, order dismissing his objections. However, an order that dismisses objections to an account and does not confirm the account is not an appealable order. ***In re Estate of Meininger***, 532 A.2d 475, 477 (Pa. Super. 1987) ("Absent confirmation, and its imprimatur of finality, an appeal [from an order dismissing objections to an account] is premature and therefore interlocutory."); ***see also*** Pa.R.A.P. 342(a)(1) (providing that appeal may be
*(Footnote Continued Next Page)*

- 8 -

Pa.R.A.P. 1925(b) concise statement. In a statement in lieu of Rule 1925(a) opinion, the trial court stated its intention to rely on its January 30, 2024, opinion.

Appellant presents two questions for our review:

1. Whether the [trial] court erred in finding that the Decedent's coin collection and personalty belonged to Sharon …, in direct contradiction of the Decedent's [will,] and Pennsylvania jurisprudence[?]

2. Whether the trial court erred in requiring that Appellant's private safe deposit box be opened and [its] contents inventoried, and finding those contents belonged to the Decedent[?]

Appellant's Brief at 19.

We observe the following standard of review:

When reviewing [an order] entered by the orphans' court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. **Because the orphans' court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion**.

However, we are not constrained to give the same deference to any resulting legal conclusions. … This Court's standard of review of questions of law is *de novo*, and the scope of review is plenary, as we may review the entire record in making our determination.

*In re Estate of Tscherneff*, 203 A.3d 1020, 1024 (Pa. Super. 2019) (emphasis added; citations omitted; some capitalization modified).

_____

taken as of right from order confirming an account). Here, the appeal properly lies from the August 5, 2024, order confirming the account. The caption has been corrected accordingly.

- 9 -

The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the orphans' court's findings, our task is to ensure that the record is free from legal error and to determine if the orphans' court's findings are supported by competent and adequate evidence[,] and are not predicated upon capricious disbelief of competent and credible evidence.

When the orphans' court has come to a conclusion through the exercise of its discretion, the party complaining on appeal has a heavy burden. It is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. A conclusion or judgment constitutes an abuse of discretion if it is so lacking in support as to be clearly erroneous…. If the lack of evidentiary support is apparent, reviewing tribunals have the power to draw their own inferences and make their own deductions from facts and conclusions of law. Nevertheless, we will not lightly find reversible error and will reverse an orphans' court decree only if the orphans' court applied an incorrect rule of law or reached its decision on the basis of factual conclusions unsupported by the record.

*In re Jerome Markowitz Trust*, 71 A.3d 289, 297-98 (Pa. Super. 2013) (citation and brackets omitted; some capitalization modified).

In his first issue, Appellant argues Sharon's "claims to [the] coin collection, as well as all other personal property belonging to Decedent at the time of his death, should be forfeited…" Appellant's Brief at 37. Appellant

maintains "Pennsylvania law is clear that where spouses have separated, even though divorce has not yet been accomplished, the surviving spouse forfeits a claim to [the deceased spouse's e]state." *Id.* at 36 (citing *In re Estate of Talerico*, 137 A.3d 577 (Pa. Super. 2016), *In re Estate of Fulton*, 619 A.2d 280 (Pa. Super. 1992), and *In re Crater's Estate*, 93 A.2d 475 (Pa. 1953)). Appellant asserts forfeiture is warranted here because Sharon and Decedent "agreed to live separate and apart for more than 10 years, kept separate finances, contemplated divorce, and the record is clear that both engaged in extramarital affairs." *Id.*

The trial court rejected Appellant's forfeiture argument, reasoning as follows:

> Appellant insists that Sharon … does not have ownership of any of Decedent's personalty because forfeiture should apply. When forfeiture does apply, a surviving spouse has no right or interest to the [deceased] spouse's estate. 20 Pa.C.S.A. § 2106.[7]

---

[7] Section 2203 of the Probate, Estates and Fiduciaries Code provides that "when a married person domiciled in this Commonwealth dies, his surviving spouse has a right to an elective share of one-third of," *inter alia*, "[p]roperty passing from the decedent by will or intestacy." 20 Pa.C.S.A. § 2203(a)(1). Section 2106 provides, in part:

> A spouse who, for one year or upwards previous to the death of the other spouse, has willfully neglected or refused to perform the duty to support the other spouse, or who for one year or upwards has willfully and maliciously deserted the other spouse, shall have no right or interest under this chapter [(relating to intestate succession)] in the real or personal estate of the other spouse.

*Id.* § 2106(a)(1). Section 2208 provides: "A surviving spouse who under the provisions of section 2106 (relating to forfeiture) would not be entitled to a

*(Footnote Continued Next Page)*

- 11 -

However, we do not need to determine if forfeiture applies because Sharon … makes no claim upon Decedent's estate assets, nor is [Executor] arguing that Sharon … should receive assets from the Estate. Instead, [Executor] claims that any of the property that went to Sharon … did so because it had belonged to her and not to the Estate.

Trial Court Opinion, 1/30/24, at 4 (footnote added).

We agree with the trial court's analysis. Forfeiture implicates a surviving spouse's right to share in the deceased spouse's **estate**, but property held in tenancy by the entireties does not become part of a decedent's estate. **See** 20 Pa.C.S.A. §§ 2106, 2208; **Jones**, 270 A.3d at 13. Appellant does not clearly argue that forfeiture applies to entireties property, and the authorities he cites involve only forfeiture of the spousal share in a decedent's estate. **See In re Estate of Talerico**, 137 A.3d 577; **In re Estate of Fulton**, 619 A.2d 280; **In re Crater's Estate**, 93 A.2d 475. As Sharon made no claim on Decedent's Estate, Appellant's forfeiture argument fails.

Alternatively, Appellant argues Sharon did not jointly own the coin collection with Decedent. Appellant's Brief at 37-39. As Appellant acknowledges,

> **there is a presumption under Pennsylvania law that property held by husband and wife is held as a tenancy by the entireties and this presumption can only be overcome by clear and convincing evidence that the property was not intended to be held by the entireties**.

_____

share of the decedent's estate had he died intestate shall have no right of election." **Id.** § 2208.

*In re Estate of Navarra*, 113 A.3d 829, 833 (Pa. Super. 2015) (emphasis added; citation omitted); *see also* Appellant's Brief at 38-39 (citing *In re Estate of Navarra*, 113 A.3d at 833). Appellant maintains Decedent's will "provides the only clear and convincing evidence that the coin collection was not intended to be held by the entireties." Appellant's Brief at 39; *see also* Will, 6/1/20, ¶ 3(C) ("I give to [Appellant and Jude] so much of my coin collection … as they may select…."). Appellant argues the testimony of Sharon, Jude, and Executor regarding joint ownership of the coin collection lacked support from documentary evidence, such as receipts or accounting records. Appellant's Brief at 39.

The trial court determined Appellant failed to show "by clear and convincing evidence that [the coin collection] was not intended to be held by the entireties…." Trial Court Opinion, 1/30/24, at 3. The trial court found Sharon "credibly testified that the coins were purchased with funds from a joint account…." *Id.* (citing N.T., 8/3/23, at 280-81); *see also* N.T. 7/18/22, at 185-86 (Sharon's testimony that she viewed the coins "as being owned by both" herself and Decedent, and that Decedent "started ordering the sets [of coins] the year we were married…."). The trial court also credited Jude's testimony that Decedent had described the coins as "an investment for the family." Trial Court Opinion, 1/30/24, at 3 (citing N.T., 7/18/22, at 205).

Our review discloses the record supports these factual findings, and we will not disturb the trial court's credibility determinations. *See In re Estate*

*of Tscherneff*, 203 A.3d at 1024. We agree with the trial court that Appellant failed to meet his burden to "overcome by clear and convincing evidence" the presumption in favor of entireties property. *See In Re Estate of Navarra*, 113 A.3d at 833. Accordingly, Appellant's first issue merits no relief.[8]

In his second issue, Appellant argues the trial court erred in authorizing the joint inspection of his safe deposit boxes, and in determining the $231,000 in cash found in the boxes belonged to Decedent. *See* Appellant's Brief at 39-44.

We first address the order allowing the joint inspection. Appellant argues "Pennsylvania law permits third-party entry into the safe deposit box belonging to a decedent, [but] it does not *carte blanch* permit entry into the safe deposit box belonging to a living account holder." *Id.* at 40 (citing *Stevenson v. Economy Bank of Ambridge*, 197 A.2d 721 (Pa. 1964)). Appellant asserts the trial court "authorized the Estate to gain entry to Appellant's private safe deposit boxes without any evidence of [their] contents belonging to Decedent…." *Id.*

Regarding its order allowing the joint inspection, the trial court rejected Appellant's claim:

---

[8] Apart from the coin collection, Appellant does not clearly identify any other personal property he contends was not held in tenancy by the entireties. *See* Appellant's Brief at 38-39. To the extent Appellant argues other personal property was not held by the entireties, we deem the argument waived. *See Trust Under Deed of Wallace F. Ott*, 271 A.3d 409, 421 (Pa. Super. 2021) (stating that "an appellant waives any issue he fails to develop sufficiently").

- 14 -

> Contrary to [Appellant's] contentions[,] it has long been "evident that the orphans' court has the power within its discretion to take all reasonable precautions to safeguard and preserve the assets of an estate." ***In re Laverelle's Estate***, 101 Pa. Super. 448, 454 (1931). After careful review of Executor's motion [to safeguard property] … and [Appellant's] response, as well as weighing the credibility of witnesses[,] it was clear that there was a high likelihood that Estate assets were [located] within the safe deposit boxes. At that point[, the trial court ordered] counsel for both sides to inventory the contents of the safe deposit boxes and to videotape the contents of each….

Trial Court Opinion, 1/30/24, at 8.

The record supports the trial court's factual findings. As discussed more fully below, the record belies Appellant's assertion that there was no evidence that his safe deposit boxes contained Decedent's property. Moreover, the only authority Appellant cites, ***Stevenson***, is inapposite. In ***Stevenson***, the appellant and the decedent co-leased a safe deposit box. ***Stevenson***, 197 A.2d at 723. Following the decedent's death, at the urging of the decedent's counsel, the appellee bank barred the appellant from accessing the box. ***Id.*** at 723-24. Our Supreme Court held the appellant "had a contractual right of access to and entry into the box [and,] … the bank was without legal authority or justification to preclude her from exercising that right." ***Id.*** at 726. ***Stevenson*** did not involve an estate's right to inspect a safe deposit box not owned by the decedent, nor an orphans' court's authority to order such an inspection. Appellant makes no attempt to analogize ***Stevenson***'s facts to the instant case. As Appellant provides no authority supporting his argument, the argument fails.

Appellant further argues the trial court erred in determining the cash belonged to Decedent, asserting "there is no evidence that the items in the safe deposit boxes belong to anyone other than Appellant." Appellant's Brief at 41. He maintains "the record is barren of any evidence tying the contents of the safe deposit boxes to the Decedent." *Id.* Appellant characterizes Vicki Mauzy's testimony as "vague" and "unsubstantiated." *Id.* at 42. He similarly characterizes as "vague" and "unsubstantiated" the testimony of Sharon, Jude, and Executor regarding Decedent's habit of hoarding cash. *Id.* at 43. Appellant also asserts "[i]t doesn't logically follow that the Decedent would hoard cash, but not keep any record of the cash…." *Id.* at 42.[9] Finally, Appellant maintains "[c]redibility is indeed an issue in this case[;] however[, it is] not Appellant's credibility that should be questioned. Appellant testified consistently, unlike the Executor[] and [other] family members," including Sharon and Jude. *Id.* at 44.

The trial court determined Executor met his burden of proving the cash belonged to Decedent. *See* Trial Court Opinion, 1/30/24, at 6 (citing *Whitenight v. Whitenight*, 278 A.2d 912, 914 (Pa. 1971) ("The burden of proof is on anyone who claims property in the possession of another to establish facts essential to the validity of his claim of ownership.")). The trial court found Sharon, Jude, and Executor credibly testified that Decedent had a

---

[9] We observe Appellant testified that **Appellant** hoarded the cash but kept no record of it. *See* N.T., 8/3/23, at 51-57.

habit of hoarding cash. *Id.* at 7. The trial court also found Vicki Mauzy credibly testified that Decedent told her he had enough money in the lockbox at his Hidden Valley home to pay off her $152,000 mortgage. *Id.* The trial court found Appellant possessed the lockbox key; Appellant had nearly exclusive access to Decedent's homes around the time of Decedent's death; and Appellant opened and accessed his safe deposit boxes around the same time. *Id.* at 7-8. Most notably, the trial court found Appellant's testimony regarding the cash "lack[ed] credibility"; his explanation was "not to be believed"; and his story was "incredible." *Id.* at 9.

Our review discloses the record supports the trial court's findings. Appellant's argument largely consists of challenging the credibility of the other witnesses. However, the trial court specifically found those witnesses credible and Appellant incredible. As we discern no abuse of discretion in the trial court's credibility determinations, we will not disturb them. *See In re Estate of Tscherneff*, 203 A.3d at 1024 (the orphans' court "determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion."); *In re Jerome Markowitz Trust*, 71 A.3d at 297-98 (appellate courts accord great weight to the orphans' court's "findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe…."). Accordingly, Appellant's second issue merits no relief.

Order affirmed.  Application to strike denied as moot.[10]

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

2/25/2025

---

[10] Executor filed an application to strike Appellant's reply brief, arguing Appellant "violated [Pa.R.A.P.] 2113 by raising for the first time in [his] reply brief the unsupported claim that the [trial] court abused its discretion as a result of bias of the judge."  Application to Strike Reply Brief, 12/12/24, ¶ 3 (capitalization modified); *see also* Pa.R.A.P. 2113 ("the appellant may file a brief in reply to matters raised by appellee's brief … and not previously addressed in appellant's brief."); ***Riverview Carpet & Flooring, Inc. v. Presbyterian SeniorCare***, 299 A.3d 937, 969 n.20 (Pa. Super. 2023) (observing that "an appellant is prohibited from raising new issues in a reply brief," and issues raised for the first time in a reply brief may be deemed waived).  We agree with Executor that Appellant raised the issue of the trial court's alleged bias for the first time in his reply brief.  *See* Appellant's Reply Brief at 2-3.  We therefore deem the issue waived, and deny the application to strike as moot.